**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, *et al.*,[1] | ) ) ) | Case No. 26-90737 (CML) |
| | ) | |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING**
**NOTIFICATION AND HEARING PROCEDURES FOR**
**CERTAIN TRANSFERS OF AND DECLARATIONS OF**
**WORTHLESSNESS WITH RESPECT TO COMMON STOCK,**
**(II) DIRECTING THAT ANY SUCH TRANSFER OR DECLARATION**
**OF WORTHLESSNESS IN VIOLATION OF SUCH PROCEDURES BE**
**NULL AND VOID AB INITIO, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 2:00 p.m. (prevailing Central Time) on July 27, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 27, 2026, at 2:00 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002.  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/RNDC.  The location of Debtor Republic National Distributing Company, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 4300 Wildwood Parkway, Suite 200, Atlanta, GA 30339.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) approving certain notification and hearing procedures, substantially in the form attached as Exhibit 1 to the Order (the "Procedures"), related to certain transfers of, or declarations of worthlessness, with respect to, Debtor Republic National Distributing Company, LLC's ("RNDC") existing classes[3] (or series) of units of ownership or any Beneficial Ownership[4] therein (any such record or Beneficial Ownership of units of ownership, collectively, the "Common Stock"); (b) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to, Beneficial Ownership of Common Stock in violation of the Procedures shall be null and void *ab initio*; and (c) granting related relief.

---

[2]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John R. Castellano, Chief Restructuring Officer of Republic National Distributing Company, LLC and its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to such terms in the First Day Declaration or later in this Motion, as applicable.

[3]   The Debtors have three distinct classes of outstanding equity units, each of which carries identical voting rights. These classes are the NDC units (collectively, the "NDC Units"), the Class A BG units (collectively, the "Class A BG Units"), and the Class B BG units (collectively, the "Class B BG Units").

[4]   "Beneficial Ownership" will be determined in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 as amended (the "I.R.C."), and the U.S. Department of the Treasury regulations thereunder ("Treasury Regulations") (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

**Background**

5.      RNDC (together with its Debtor and non-Debtor affiliates, the "Company") was, at its height, the nation's second largest alcoholic beverage distributor, operating across 40 states and specializing in wine and spirits distribution.  Built on the strong foundation of three family-owned businesses, the Company historically enjoyed deep-seated relationships with over 2,000 suppliers and 170,000 customers across its expansive nationwide distribution network.  With headquarters in Atlanta, Georgia, the Debtors currently operate across 21 states and employ a workforce of approximately 1,460 employees.

3

6.      On July 26, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Tax Attributes**

7.      Companies may generate various Tax Attributes in the course of their operations. Generally, a company generates net operating losses ("NOLs") if the operating expenses that it has incurred exceed the revenues that it has earned during a single tax year.  A company may apply or "carry forward" NOLs to reduce future tax payments (subject to certain conditions discussed below).  *See* I.R.C. § 172.  Additionally, a company's deduction for net business interest expense is generally limited to 30 percent of its adjusted taxable income plus certain other amounts.  *See* I.R.C. § 163.  Any business interest expense that exceeds the maximum permitted deduction is disallowed and is carried forward and treated as business interest expense in the following tax year ("163(j) Carryforwards").  *See* I.R.C. § 163(j).  Other Tax Attributes have other sources.  While NOLs and 163(j) Carryforwards are the most ubiquitous tax attributes, companies may also generate a variety of other tax attributes, including general business credits, research and development credit carryforwards, unused minimum tax credits, foreign tax credits, business tax credits, and capital loss carryforwards, as the case may be.  Moreover, the "tax basis" in a company's assets can itself be a tax attribute.

8.      As discussed below, a company's Tax Attributes can become subject to significant limitation under sections 382 and 383 of the I.R.C. if an "ownership change" occurs.  The purpose of the relief requested herein is to minimize the risk that an "ownership change" occurs before the conclusion of these chapter 11 cases.  In doing so, the Debtors intend to maximize the value of their estates by limiting tax liabilities generated during or as a result of the actions taken during these chapter 11 cases.

9.      The Debtors estimate that, as of December 31, 2025, with respect to the Debtor entities who are taxed as corporations for U.S. federal income tax purposes, the Debtors had approximately $660.6 million of federal NOLs and approximately $62.2 million of 163(j) Carryforwards.  The Debtors may generate substantial additional tax attributes in the current tax year, including during the pendency of these chapter 11 cases (collectively with the aforementioned 163(j) Carryforwards and certain other tax attributes (including NOLs), the "Tax Attributes").  The Tax Attributes are potentially of significant value to the Debtors and their estates because the Tax Attributes may offset U.S. federal taxable income or U.S. federal tax liability in future years.  The Debtors may be able to utilize the Tax Attributes to offset taxable income, including any taxable income generated by potential transactions, such as the contemplated sale transactions, or any other taxable disposition of assets, consummated during these chapter 11 cases.  Additionally, depending on the structure utilized in a chapter 11 plan (the "Plan"), in the event that any of the Tax Attributes were to survive, the Debtors may be able to carry forward certain of those Tax Attributes to offset federal taxable income or federal tax liability in future years.  Accordingly, the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

10.     The relief requested herein is intended to preserve the value of the Tax Attributes to the benefit of the Debtors' stakeholders by ensuring that there are no "ownership changes" that may negatively affect the Debtors' utilization of the Tax Attributes.  A premature limitation of the Debtors' Tax Attributes could cause substantial deterioration of value and significantly reduce recoveries to the Debtors' stakeholders.  Failure to obtain the relief sought in this Motion could, therefore, greatly increase the risk that the Debtors would be unable to maximize the value of their estates.

## I.     An "Ownership Change" May Negatively Affect the Debtors' Utilization of the Tax Attributes.

11.     Sections 382 and 383 of the I.R.C. limit the amount of federal taxable income and federal tax liability, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change."  Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more "5 percent" shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the "ownership change."  *See* I.R.C. §§ 382(g), (i).  The total percentage point increase of stock owned by one or more "5 percent" shareholders within the measuring period is generally referred to as the amount of the "ownership shift."  In situations involving multiple classes of stock with different rights, the determination of whether a shareholder is a "5 percent" shareholder is made by reference to stock value (without regard to certain considerations such as control premiums or minority discounts, and with reference to certain mechanical tests).  For example, an "ownership change" would occur in the following situation:

> An individual ("A") owns 50.1 percent of the stock of corporation XYZ.  A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock.  Under section 382 of the I.R.C., an "ownership change" has occurred because B's interest in

XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5-percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

12.     Under these rules, a company can be harmed as a result of actions by parties that are unknown to the company. As noted above, if a person unknown to the company were to acquire more than 5 percent of the company's stock (determined in accordance with the rules set forth above), the company would experience an "ownership shift" (or an increase in the magnitude of an "ownership shift") that could lead to an "ownership change." By the time the company knew who the unidentified shareholder was, the shareholder would have already purchased the shares and the harm would be done. Accordingly, for the Procedures to be effective, the Procedures must bind unknown parties.

13.     Highlighting the importance of this issue, some companies have enacted charter restrictions to protect their tax attributes. Such charter restrictions may impose **substantive** limitations on sales and purchases of equity that are similar to the procedural limitations requested in this Motion. Although such charter restrictions are put to a shareholder vote before being enacted, they always bind unknown parties (*i.e.*, persons that are not shareholders at the time that the vote is taken) and do so via public information issued by the company in connection with the adoption of such charter restrictions. It is true that the relief requested in this Motion is not being put to a shareholder vote—nor should it be, because the requested relief is intended to maximize the value of the Debtors' Tax Attributes for all stakeholders—but unlike charter restrictions, the relief requested in this Motion merely implements **procedures** that must be observed before relevant actions are taken.

7

14.     An "ownership change" can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder."  I.R.C. § 382(g)(4)(D).  A 50-percent shareholder is any person or entity (or group of people that is treated as a single entity under the applicable rules) with Beneficial Ownership of 50 percent or more of a corporation's stock "at any time during the three-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed.  *Id.*  If the "50-percent shareholder" still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the I.R.C. essentially treat such person or entity as newly purchasing the stock on the first day of the next taxable year.  For example, if a person or entity with 50 percent of a corporation's stock claims a worthless stock deduction with respect to the 2025 tax year but does not sell such stock in 2025, that person is treated as:  (a) not having owned the stock at the end of 2025; and (b) having purchased the stock on the first day of the 2026 tax year.  That deemed purchase would cause an "ownership change" because the 50-percent shareholder would be deemed to have a 50-percentage point increase in its stock ownership.  Notably, while the seminal case of *Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991), is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

15.     If an "ownership change occurs," section 382 of the I.R.C. limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the I.R.C. limits the amount of a corporation's future federal tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all of the corporation's stock prior to the ownership change multiplied by the long-term

tax-exempt rate that applies to the month that the ownership change occurred.[5] Pre-change losses and excess credits include the Debtors' Tax Attributes and any so-called "recognized built-in losses" (as defined in section 382(h)(2) of the I.R.C.).[6] Once a Tax Attribute is limited under section 382 or 383 of the I.R.C., its use may be limited forever.[7] Thus, certain transfers or worthless stock deductions with respect to the Beneficial Ownership of Common Stock effected before the effective date of the Debtors' emergence from chapter 11 may trigger an "ownership change" for I.R.C. purposes, endangering the Debtors' ability to utilize the Tax Attributes, which would cause substantial damage to the Debtors' estates.

16.     Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value.  Specifically, the proposed Order will affect only:  (a) the holders of the equivalent of at least 22 NDC Units, 14 Class A BG Units, or 6 Class B BG Units (*i.e.*, 4.5 percent of outstanding NDC Units, Class A BG Units, or Class B BG Units, respectively);[8] (b) parties who are interested in purchasing sufficient Beneficial Ownership of Common Stock to result in such party becoming a holder of 4.5 percent or more of Beneficial Ownership of outstanding NDC Units, Class A BG Units, or Class B BG Units; and (c) any "50-percent shareholder" seeking to

---

[5]   The applicable long-term tax-exempt rate changes from month to month.  For ownership changes occurring in July 2026, the applicable long-term tax-exempt rate is 3.77 percent.

[6]   The rules relating to potential limitations on the ability to offset taxable income with so-called recognized built-in losses are highly complex and depend on, among other things, the extent (if any) of a debtor's "net unrealized built-in loss."  A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the I.R.C.) immediately prior to the "ownership change."  I.R.C. § 382(h)(3)(A)(i).  Once a net unrealized built-in loss is limited under section 382 or 383 of the I.R.C., its use is limited for five years.

[7]   Recognized built-in losses that are deducted following the expiration of a five-year "recognition period" are no longer subject to limitation, but any recognized built-in losses that are deducted prior to the expiration of such period are limited forever.

[8]   Based on approximately 500 NDC Units, 323 Class A BG Units, and 146 Class B BG Units outstanding as of the Petition Date.

claim a worthless stock deduction with respect to the NDC Units, Class A BG Units, or Class B BG Units, respectively.[9]

17.     To maximize the use of the Tax Attributes and enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief to establish the Procedures, which will enable them to closely monitor certain transfers of Beneficial Ownership of Common Stock and certain worthless stock deductions with respect to Beneficial Ownership of Common Stock so as to be in a position to act expeditiously to prevent such transfers or worthlessness deductions, if necessary, with the purpose of preserving the Tax Attributes.  By establishing and implementing such Procedures, the Debtors will be in a position to object to "ownership shifts" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the Debtors' estates and all of the stakeholders in these chapter 11 cases.

**II.     Proposed Procedures for Transfers of or Declarations of Worthlessness with Respect to Common Stock.**

18.     The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure that the Tax Attributes are preserved.  The Procedures are fully set forth in Exhibit 1 to the Order.

---

[9]     As defined above, a "50-percent shareholder" is any person or entity (or group of people that is treated as a single entity under the applicable rules) with Beneficial Ownership of 50 percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the "worthless stock deduction" (for U.S. federal income tax purposes) is claimed.  I.R.C. § 382(g)(4)(D).  For the avoidance of doubt, a person or entity owning less than 50 percent of the Debtors' equity may nevertheless constitute a "50-percent shareholder" because of aggregation with other persons or entities that acquired the Debtors' equity as part of a coordinated acquisition.

**Basis for Relief**

19.     Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541.  The Tax Attributes are property of the Debtors' estates.  *See Off. Comm. of Unsecured Creditors v. PSS S.S. Co.* (*In re Prudential Lines Inc.*), 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."); *Off. Comm. of Unsecured Creditors v. Forman (In re Forman Enters., Inc.)*, 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (finding that NOLs were property of the debtors' estates).  Moreover, section 362(a)(3) of the Bankruptcy Code stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Any act of a holder of a debtor's equity securities that causes the termination, or limits the use, of the Tax Attributes violates the automatic stay.  *See, e.g.*, *In re Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay).

20.     Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates.  Under sections 382 and 383 of the I.R.C., certain transfers of, or declarations of worthlessness with respect to, Beneficial Ownership of Common Stock prior to the consummation of the Plan could cause the termination, or limit the use, of the Tax Attributes.  As stated above, the Debtors estimate that as of December 31, 2025, the Debtors, who are taxed as corporations for U.S. federal income tax purposes, had approximately $660.6 million of federal NOLs and approximately $62.2 million of 163(j) Carryforwards and, in addition, the Debtors may generate substantial additional Tax Attributes in the current tax year, including during the pendency of these chapter 11 cases.  These Tax Attributes may be necessary to address tax consequences resulting

11

from the implementation of the Plan and, depending upon the structure utilized to consummate the Plan, they may provide the potential for material future tax savings (including in post-emergence years, if applicable). The termination or limitation of the Tax Attributes could be materially detrimental to all parties in interest, including by potentially limiting the Debtors' ability to utilize certain structures to consummate the Plan. Granting the relief requested herein will preserve the Debtors' flexibility to operate their businesses during the pendency of these chapter 11 cases and implement an exit plan that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

21.     Additionally, the Procedures do not bar all transfers of or declarations of, worthlessness with respect to, Beneficial Ownership of Common Stock. The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the "ownership change" test pursuant to sections 382 and 383 of the I.R.C. and preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' ability to utilize the Tax Attributes. Because of the Tax Attributes' importance to the Debtors' chapter 11 cases, and thus all parties in interest, the benefits of implementing the Procedures outweigh any potential drawbacks of subjecting a small subset of potential transfers to the Procedures.

### Emergency Consideration

22.     In accordance with Bankruptcy Local Rule 9013-1 and section G of the Complex Case Procedures, the Debtors request emergency consideration of this Motion. This Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date. The relief will save costs and avoid undue administrative burden and confusion only if granted immediately. The

12

Debtors, therefore, request that the Court approve the relief requested in this Motion on an emergency basis.

**Reservation of Rights**

23.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested in this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien (that arises under contractual rights, common law, statutory law, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates, including any lien that may be satisfied pursuant to the relief requested in this Motion, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes

of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

### Notice

24.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Bank Lenders; (d) the Bank Agent; (e) the Second Lien Lender; (f) the Equipment Loan Lenders; (g) holders of the Owner Notes; (h) the office of the attorney general for each of the states in which the Debtors operate; (i) the Internal Revenue Service; (j) any other governmental agencies having a regulatory or statutory interest in these chapter 11 cases; (k) all direct equityholders in RNDC; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: July 27, 2026

*/s/ John F. Higgins*

| | |
|---|---|
| **PORTER HEDGES LLP** | **KIRKLAND & ELLIS LLP** |
| John F. Higgins (TX Bar No. 09597500) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| M. Shane Johnson (TX Bar No. 24083263) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Megan Young-John (TX Bar No. 24088700) | Christopher Marcus, P.C. (*pro hac vice* pending) |
| Joanna D. Caytas (TX Bar No. 24127230) | Maddison Levine (*pro hac vice* pending) |
| 1000 Main St., 36th Floor | 601 Lexington Avenue |
| Houston, Texas 77002 | New York, New York 10022 |

PORTER HEDGES LLP
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Joanna D. Caytas (TX Bar No. 24127230)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:     (713) 226-6000
Facsimile:     (713) 228-1331
Email:          jhiggins@porterhedges.com
                 sjohnson@porterhedges.com
                 myoung-john@porterhedges.com
                 jcaytas@porterhedges.com

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Maddison Levine (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                 cmarcus@kirkland.com
                 maddison.levine@kirkland.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

## Certificate of Accuracy

In accordance with Bankruptcy Local Rule 9013-1(i), I certify that the foregoing statements are true and accurate to the best of my knowledge.

*/s/ John R. Castellano*
John R. Castellano

## Certificate of Service

I certify that on July 27, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.   Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims and noticing agent.

*/s/ John F. Higgins*
John F. Higgins