**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, *et al.*,[1] | ) ) ) | Case No. 26-90737 (CML) |
| | ) | |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u>**
**MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN**
**AND ADMINISTER THEIR EXISTING SUPPLIER AND**
**CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION**
**OBLIGATIONS RELATED THERETO AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 2:00 p.m. (prevailing Central Time) on July 27, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 27, 2026, at 2:00 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002.  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/RNDC.  The location of Debtor Republic National Distributing Company, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 4300 Wildwood Parkway, Suite 200, Atlanta, GA 30339.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):  (a) authorizing the Debtors to maintain, continue, administer, modify, supplement, and/or terminate their Supplier and Customer Programs and honor prepetition obligations related thereto on a postpetition basis in the ordinary course; and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), 363(c), 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John R. Castellano, Chief Restructuring Officer of Republic National Distributing Company, LLC and its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to such terms in the First Day Declaration or later in this Motion, as applicable.

rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

## Background

5.      Republic National Distributing Company, LLC (together with its Debtor and non-Debtor affiliates, the "Company") was, at its height, the nation's second largest alcoholic beverage distributor, operating across 40 states and specializing in wine and spirits distribution. Built on the strong foundation of three family-owned businesses, the Company historically enjoyed deep-seated relationships with over 2,000 suppliers and 170,000 customers across its expansive nationwide distribution network.  With headquarters in Atlanta, Georgia, the Debtors currently operate across 21 states and employ a workforce of approximately 1,460 employees.

6.      On July 26, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Supplier and Customer Programs[3]**

7.      As more fully set forth in the First Day Declaration, the Debtors play an essential role within the three-tier alcoholic-beverage distribution system, sitting in between suppliers and customers by purchasing product from their suppliers and transporting and selling those products to both on- and off-premise customers.[4]   As one of the nation's largest alcohol distributors historically, the Debtors have developed deep-seated relationships with nationally-recognized supplier brands and customer retailers and on-premise operators.   In the ordinary course of business, the Debtors provide certain Supplier and Customer Programs that are vital to the Debtors' ability to engender goodwill, maintain loyalty, influence purchasing behavior within regulatory constraints, protect margins, and differentiate from other distributors in a highly competitive environment.   Because customers drive the entire value chain and suppliers create and control the products that drive consumers' behavior, maintaining the goodwill of both customers and suppliers is critical to the Debtors' sale efforts and is necessary to maximize value for the benefit of all stakeholders.

8.      The Debtors have historically relied upon, or provided, as applicable, (a) Return Policies, (b) Deposit Policies, (c) Point-of-Sale Support Services, (d) Other Promotions, and (e) the eRNDC Platform (collectively, the "Supplier and Customer Programs"),[5] to better serve

---

[3]     Although this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted certain Supplier and Customer Programs.  The Debtors request relief with respect to all Supplier and Customer Programs, regardless of whether such Supplier and Customer Program is specifically identified herein.

[4]     An on-premise customer is one that is licensed to sell alcohol for consumption at the same location where the product was received (*e.g.*, bars and restaurants).  An off-premise customer is one that is licensed to sell alcohol for consumption elsewhere (*e.g.*, grocery stores and liquor stores).

[5]     As described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Continue to Provide All TSA Services and Honor All Obligations Related Thereto and (II) Granting Related Relief* (the "TSA Motion"), filed contemporaneously herewith, the Debtors provide certain services related to the Supplier and Customer Programs to Reyes and Quality Brands under the TSAs (each as defined and described in the TSA Motion).  As described in the TSA Motion and the *Debtors' Emergency Motion for Entry of Interim and*

their suppliers and customers and to maintain strong relationships with respect thereto. The Supplier and Customer Programs are customary in the Debtors' industry and central to preserving the Debtors' long-standing relationships with their customers and suppliers. The Debtors therefore believe that their ability to continue the Supplier and Customer Programs, while honoring any supplier- and customer-related prepetition business practices thereunder in the ordinary course of business, is necessary to meet competitive market pressures, ensure supplier and customer satisfaction, comply with contractual obligations, maintain strategic relationships, and successfully pursue the proposed sale transactions. Any disruption to the Supplier and Customer Programs would disrupt the value-maximizing sale processes by severely impairing the Company's goodwill and brand among suppliers and customers. Thus, maintaining the Supplier and Customer Programs is of vital importance.

9.      As of the Petition Date, the Debtors estimate that there are approximately $42.24 million of prepetition obligations outstanding on account of the Supplier and Customer Programs. Certain of these obligations, however, ***do not*** entail the expenditure of cash; nevertheless, out of an abundance of caution, the Debtors seek the authorization to honor any prepetition and postpetition obligations related thereto. By this Motion, the Debtors seek authorization to maintain, continue, administer, modify, supplement, and/or terminate the

---

*Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Maintain Existing Bank Accounts, Business Forms, and Books and Records, and (C) Continue Intercompany Transactions, (II) Granting Administrative Expense Status to Certain Postpetition Intercompany Transactions, and (III) Granting Related Relief* (the "Cash Management Motion"), filed contemporaneously herewith the Debtors are required to retain and continue to administer the Debtors' existing disbursement account structure throughout the Reyes Transition Period (as defined and described in the TSA Motion) to support payment processing for the acquired businesses on Reyes's behalf, which includes collecting certain payments from customers in Hawaii on behalf of Reyes and remitting such amounts to Reyes. For the avoidance of doubt, the Debtors do not seek authority to continue to provide such TSA Services (as defined in the TSA Motion) or honor obligations in connection therewith in this Motion but rather request such authority in the TSA Motion or, to the extent that the TSA Services implicate the collection, transfer, and/or disbursement of funds through the Bank Accounts (as defined in the Cash Management Motion) on behalf of Reyes, in the Cash Management Motion.

Supplier and Customer Programs in the ordinary course of business on a postpetition basis and to continue to honor all obligations incurred on account of the Supplier and Customer Programs, if any, including, the authority to pay any prepetition obligations associated therewith.

**I.      Customer Return Policies.**

10.      Consistent with industry practice and to accommodate customer needs, the Debtors maintain certain return policies to facilitate smooth operations and maintain business relationships (the "Return Policies").  Given the nature of the Debtors' inventory, the Return Policies are informed by applicable state law, which governs certain key terms, including, for example, the timeframe within which the Debtors must accept customer returns and the manner in which customers are compensated for returned products.  Generally, if an order does not conform to the customer's reasonable expectations (*e.g.*, the wrong product was ordered or delivered), the Debtors will issue a credit to the applicable customer who can then return or retain the product depending on the underlying reason for the return.

11.      The Return Policies are essential to maintaining the goodwill of the Debtors' customer base, as such policies assure the Debtors' customers that they will be "made whole" to the extent that any product is damaged, defective, or incorrectly processed.  Without the Return Policies, customers may be unwilling to do business with the Debtors, resulting in a decline in revenue, which would ultimately be borne by the Debtors' estates.

12.      As of the Petition Date, the Debtors estimate that approximately $37.3 million is outstanding on account of the Return Policies.  Accordingly, the Debtors seek authority to maintain, continue, administer, modify, supplement, and/or terminate the Return Policies in the ordinary course of business on a postpetition basis consistent with past practice, and to continue

to honor all obligations incurred on account of the Return Policies, including, the authority to pay any prepetition obligations associated therewith.

## II.     Customer Deposit Policies.

13.     Consistent with industry practice, the Debtors maintain certain deposit policies to facilitate smooth operations and manage risk (collectively, the "Deposit Policies").  In the ordinary course of business, the Debtors distribute certain products in kegs or other reusable containers and, in connection with those sales, collect refundable deposits from customers (the "Customer Deposits") to secure the return of such containers (the "Returnable Container Program").  The Customer Deposits are property of the Debtors' estates, constitute security for the Customer's ultimate return of the containers, and are refunded, credited, or applied in accordance with the Deposit Policies when the containers are returned.  In addition, because the Debtors generally pay corresponding refundable deposits to applicable suppliers when they acquire products in the same or similar returnable containers, the Returnable Container Program supports an approximately cash-neutral distribution process for the Debtors.

14.     As of the Petition Date, the Debtors estimate that approximately $500,000 is outstanding on account of the Deposit Policies.  Accordingly, the Debtors seek authority to maintain, continue, administer, modify, supplement, and/or terminate the Deposit Policies in the ordinary course of business on a postpetition basis consistent with past practice, and to continue to honor all obligations incurred on account of the Deposit Policies, including, the authority to pay any prepetition obligations associated therewith.

## III.    Point-of-Sale Support Services.

15.     Point-of-sale support services (collectively, the "Point-of-Sale Support Services")—i.e., merchandising and promotional activities that an alcohol distributor provides to retail and on-premise customers to ensure products are properly displayed, competitively

7

positioned, and effectively promoted at the point where purchasing decisions are made—are a critical component of the Supplier and Customer Programs in the three-tier distribution system. The Debtors assist retailers by providing promotional visuals (*e.g.*, menus, posters, displays, signage, and other graphics) in partnership with Ansira Partners, Inc. (f/k/a BrandMuscle, Inc.), the Debtors' preferred printing vendor, to directly influence how products are presented, promoted, and sold at the retail level.  These services help retailers effectively market products to consumers, reinforce brand visibility at the moment of purchase, and drive consistent sales, particularly as alcohol purchases are highly influenced by visibility and placement.

16.     Suppliers reimburse the Debtors for expenditures on account of Point-of-Sale Support Services for certain product references within a promotional visual.  Such reimbursements vary based in part on the type of print, number of product mentions, duration of the promotion, prominence and placement of the product.  If the Debtors are unable to continue providing Point-of-Sale Support Services, retail partners would be less incentivized to purchase products from the Debtors which would then negatively impact the Debtors' supplier relationships. Continuation of the Point-of-Sale Support Services is therefore essential to maintain customer relationships, perform contractual obligations, and sustain goodwill as the Debtors navigate these chapter 11 cases.

17.     As of the Petition Date, the Debtors estimate that approximately $1.19 million is outstanding on account of the Point-of-Sale Support Services.  Accordingly, the Debtors seek authority to maintain, continue, administer, modify, supplement, and/or terminate the Point-of-Sale Support Services in the ordinary course of business on a postpetition basis consistent

with past practice and to continue to honor all obligations incurred on account of the Point-of-Sale Support Services, including the authority to pay any prepetition obligations associated therewith.

**IV.     Other Promotions.**

18.     In addition to the Point-of-Sale Support Services, in the ordinary course of business, the Debtors administer a variety of industry-standard promotions to support customers' sales to end-consumers and increase brand awareness for supplier products.  These promotions include, among others:  (a) sponsorships; (b) supplier and product events (*e.g.*, marketing events featuring products, typically in connection with new brand launches designed to generate market awareness); (c) product samples; (d) media and advertising support; (e) mentoring events to encourage depletion and pull through of product (*e.g.*, waitstaff trainings, managed bar nights, and wine dinners); (f) consumer tastings intended to introduce consumers to certain products and educate them regarding the same; (g) coupons and other discounts in compliance with applicable state law and regulatory requirements; and (h) sweepstakes sponsored by certain brands (collectively, the "Other Promotions").  The Debtors' local sales teams manage the majority of the Other Promotions, leveraging their market expertise and on-site experience with customers to implement the Other Promotions effectively.

19.     The Debtors pay the Other Promotion expenses on 30-day terms and are subsequently reimbursed by suppliers in the form of a credit against the Debtors' accounts payable. Given the diverse array of the Other Promotions offered, the amount of such reimbursements can differ substantially based on the type of Other Promotion, from long-term sponsorship commitments to brief, one-hour consumer tastings.  If the Debtors are unable to continue administering and offering the Other Promotions, retail customers would be disincentivized from purchasing from the Debtors, which would negatively impact the Debtors' supplier relationships. By supporting retailers in this way, the Debtors strengthen customer relationships, enhance

supplier brand performance, and contribute to stable, predictable demand across the distribution channel.  Discontinuing the Other Promotions may reduce demand for products distributed by the Debtors, strain customer and supplier relationships, and damage the Debtors' reputation in the market (and, as a result, their sale efforts) because distributors in the three-tier system are expected to provide these services for, among other reasons, marketing purposes.  Therefore, continuation of the Other Promotions is essential to maintaining supplier trust and customer engagement, as well as preserving the Debtors' ability to service customers and supplier expectations.

20.     As of the Petition Date, the Debtors estimate that approximately $2.03 million is outstanding on account of the Other Promotions.  Accordingly, the Debtors seek authority to maintain, continue, administer, modify, supplement, and/or terminate the Other Promotions in the ordinary course of business on a postpetition basis consistent with past practice and to continue to honor all obligations incurred on account of the Other Promotions, including the authority to pay any prepetition obligations associated therewith.

**V.     eRNDC Platform.**

21.     Customers have the option to choose how they would like to interact with the Debtors to obtain their products and services.  One such option is through the eRNDC platform (the "eRNDC Platform"), which is a business-to-business, AI-powered eCommerce platform supported by the Debtors' non-Debtor affiliate Liberation Distribution, LLC that features more than 11,500 brands and seamlessly connects customers, sales teams, and suppliers.  Customers in 21 states benefit from product recommendations aligned with their location, local licensing requirements, and category insights.  Key features of the eRNDC Platform include placing and managing orders, inventory visibility, invoice management, pricing and promotions details, and reporting, among others.  As described herein, the Debtors are required to maintain, continue the operation of, and provide technical support for the eRNDC Platform under the TSAs.  The Debtors

10

believe that the eRNDC Platform not only facilitates their commitment to providing customers with convenient access to products but also allows the Debtors to reach customers who only order products online, which has been critical to revenue growth and brand differentiation.

22.     The eRNDC Platform is vital to preserving the value of the Debtors' estates, maintaining positive relationships with their suppliers and customers, and complying with the terms of the TSAs.  As of the Petition Date, the Debtors estimate that approximately $1.22 million is outstanding on account of running and maintaining the eRNDC Platform.  Accordingly, the Debtors seek authority to maintain, continue, administer, modify, supplement, and/or terminate the eRNDC Platform in the ordinary course of business on a postpetition basis consistent with past practice and to continue to honor all obligations, if any, related thereto.

**Basis for Relief**

**I.      Continuing to Honor the Supplier and Customer Programs in the Ordinary Course of Business Is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code and Is in the Best Interests of the Debtors' Estates.**

23.     Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing.  Consequently, the postpetition continuation, renewal, and replacement of obligations under the Supplier and Customer Programs in the ordinary course of business is likely permitted by sections 363(c), 1107(a), and 1108 of the Bankruptcy Code, without further application to this Court.  Out of an abundance of caution, however, the Debtors request the relief described herein.

24.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay the prepetition claims of suppliers).  In so doing, these courts acknowledge that several legal theories

rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims. *See In re Hi-Way Equip. Co. LLC*, No. 13-41498, 2013 WL 4516498, at *1 (Bankr. N.D. Tex. Apr. 12, 2013) (citing sections 105(a) and 363(b) in support of an order granting a motion for authorization to honor a prepetition customer program); *In re Revel AC, Inc.*, No. 13-16253, 2011 WL 13498462, at *1 (Bankr. D.N.J. Oct. 13, 2011) (same).

25.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re James A. Phillips*, 29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Additionally, pursuant to section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. at 497). In turn, section 1108 of the Bankruptcy Code authorizes a debtor in possession to "operate the debtor's business."

26.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code which codifies a bankruptcy court's inherent equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code,

courts may authorize preplan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re CoServ*, 273 B.R. at 497. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). A bankruptcy court's use of its equitable power to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

27. Maintaining the Supplier and Customer Programs and satisfying prepetition obligations related thereto is a sound exercise of the Debtors' business judgment as it will ensure, among other things, the retention and loyalty of the Debtors' customers and suppliers at this critical time. Accordingly, pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Court has authority to authorize the Debtors to continue the Supplier and Customer Programs, and pay prepetition claims arising thereunder. Continuing to administer the Supplier and Customer Programs without interruption as requested herein is critical to preserving the value of the Debtors' assets by, most importantly, preserving supplier and customer goodwill and market share. Suppliers and customers expect and rely on the Supplier and Customer Programs and may not continue supporting the Debtors' business if such programs are discontinued. It is incontrovertible

13

that support from the suppliers and customers and the communities in which they conduct business is essential for go-forward operations.  This value will inure to the benefit of the Debtors and their stakeholders.

28.     Failure to honor and continue the Supplier and Customer Programs would place the Debtors at a competitive disadvantage in the marketplace, amplifying the negative effect of any customer or supplier uncertainty that may arise, and has already arisen, from these chapter 11 cases.  Such uncertainty would likely erode the Debtors' hard-earned reputation and brand loyalty, which in turn could adversely impact the Debtors' chapter 11 process.

29.     Where, as here, retaining the loyalty and patronage of suppliers and customers is critical to the success of the Debtors' chapter 11 cases, courts in this district routinely grant relief similar to the relief requested in this Motion.  *See, e.g.*, *In re QVC Group, Inc.*, No 26-90477 (ARP) (Bankr. S.D. Tex. April 17, 2026) (authorizing the debtors to continue existing customer programs); *In re Kleopatra Finco S.à r.l.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 6, 2025) (same); *In re Ascend Performance Materials Holdings Inc.*, No. 25-90127 (CML) (Bankr. S.D. Tex. Apr. 22, 2025) (same).[6]

## Emergency Consideration

30.     The Debtors request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1 and section G of the Complex Case Procedures, and pursuant to Bankruptcy Rule 6003, which empowers a court to grant certain relief within the first 21 days after

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

the commencement of a chapter 11 case to the extent that such "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). As set forth herein, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the relief requested in this Motion during the first 21 days of these chapter 11 cases would imperil the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

31. The Debtors will have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and the consensual use of cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority to authorize all applicable financial institutions, when

requested by the Debtors, to receive, process, honor, and pay any and all checks, direct debit, wire transfer, ACH, or other payment requests in respect of the relief requested in this Motion.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

32.    The Debtors request that the Order include a finding that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exempt such relief from the 14-day stay under Bankruptcy Rule 6004(h).

## Modification of Bankruptcy Rule 2002(a)(2)

33.    The Debtors request that the Court, for cause, modify the service requirements set forth in Bankruptcy Rule 2002(a)(2) to limit service of this Motion only to the core service list and affected creditors.  In light of the breadth and complexity of the Debtors' business, serving the Motion on all creditors, even those that are unaffected by the relief sought herein, would cause unnecessary confusion and expense to the detriment of all stakeholders.  Accordingly, sufficient cause exists under Bankruptcy Rule 2002(a)(2) to modify the service requirements for this Motion.

## Reservation of Rights

34.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested in this Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affect the Debtors' rights under section 365

16

of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien (that arises under contractual rights, common law, statutory law, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates, including any lien that may be satisfied pursuant to the relief requested in this Motion, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

35.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Bank Lenders; (d) the Bank Agent; (e) the Second Lien Lender; (f) the Equipment Loan Lenders; (g) holders of the Owner Notes; (h) the office of the attorney general for each of the states in which the Debtors operate; (i) the Internal Revenue Service; (j) any other governmental agencies having a regulatory or statutory interest in these chapter 11 cases; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: July 27, 2026

/s/ *John F. Higgins*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Joanna D. Caytas (TX Bar No. 24127230)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:       (713) 228-1331
Email:            jhiggins@porterhedges.com
                     sjohnson@porterhedges.com
                     myoung-john@porterhedges.com
                     jcaytas@porterhedges.com


*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Maddison Levine (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                     cmarcus@kirkland.com
                     maddison.levine@kirkland.com


*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

## **Certificate of Accuracy**

In accordance with Bankruptcy Local Rule 9013-1(i), I certify that the foregoing statements are true and accurate to the best of my knowledge.

*/s/ John R. Castellano*
John R. Castellano

## **Certificate of Service**

I certify that on July 27, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims and noticing agent.

*/s/ John F. Higgins*
John F. Higgins