**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, *et al.*,[1] | ) ) ) | Case No. 26-90737 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u>
MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE DEBTORS' PROPOSED
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE
UTILITY SERVICES, (II) PROHIBITING UTILITY PROVIDERS
FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

---

**Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on July 27, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on July 27, 2026, at 2:00 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/RNDC. The location of Debtor Republic National Distributing Company, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 4300 Wildwood Parkway, Suite 200, Atlanta, GA 30339.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) determining that the Adequate Assurance Procedures provide the Utility Providers with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) prohibiting the Utility Providers from altering, refusing, or discontinuing services; (c) approving procedures for resolving any dispute concerning adequate assurance in the event that a Utility Provider is not satisfied with the Proposed Adequate Assurance; and (d) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John R. Castellano, Chief Restructuring Officer of Republic National Distributing Company, LLC and its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to such terms in the First Day Declaration or later in this Motion, as applicable.

4.      The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.      Republic National Distributing Company, LLC (together with its Debtor and non-Debtor affiliates, the "Company") was, at its height, the nation's second largest alcoholic beverage distributor, operating across 40 states and specializing in wine and spirits distribution. Built on the strong foundation of three family-owned businesses, the Company historically enjoyed deep-seated relationships with over 2,000 suppliers and 170,000 customers across its expansive nationwide distribution network.  With headquarters in Atlanta, Georgia, the Debtors currently operate across 21 states and employ a workforce of approximately 1,460 employees.

6.      On July 26, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

3

**Utility Services and Proposed Adequate Assurance**

**I.     The Utility Services and Utility Providers.**

7.     In connection with the operation of their businesses and management of their properties, the Debtors obtain, either directly or indirectly, electricity, natural gas, propane, telecommunications, water, waste management (including sewer and trash), and other similar services (collectively, the "Utility Services") from a number of utility providers (each, a "Utility Provider," and collectively, the "Utility Providers").   A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Providers List") is attached to the Order as Exhibit 1.[3]

8.     Pursuant to the terms of certain of the Debtors' non-residential, unexpired leases, certain Utility Services are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments.[4]  The Debtors pay the balance of the Utility Providers directly as such payments come due.  The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtors and is not limited to those set forth on the Utility Providers List.

---

[3]     Although the Debtors believe that the Utility Providers List includes all of their Utility Providers, the Debtors reserve the right to supplement such list if they inadvertently omitted any Utility Provider.  Inclusion or exclusion of an entity on the Utility Providers List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.  The Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on Exhibit 1 of the Order.

[4]     While the Proposed Adequate Assurance does not allocate any amounts toward these Utility Providers, out of an abundance of caution, the Debtors request authority to continue to pay, in the ordinary course of business and in accordance with prepetition practices (*e.g.*, indirectly through the Debtors' landlords), any amounts owed to such Utility Providers on account of the Utility Services.  Notwithstanding any current or future nonpayment, deferral, waiver, or other compromise of rent, such landlords shall be required to continue to pay for the Utility Services in the ordinary course of business until the effective date of the rejection of the applicable lease agreement, if any, pursuant to section 365 of the Bankruptcy Code.

9.     Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these chapter 11 cases.  As of the Petition Date, the Debtors operate 80 facilities across 21 states.  These facilities require Utility Services to functionally operate.  If any Utility Provider refused or discontinued the Utility Services, even for a brief period, the Debtors' business operations would be severely disrupted.  Further, the Debtors would incur significant costs to restart disrupted operations.  Any disruption to the Utility Services would also materially impair the Debtors' revenue-generating and distribution capabilities, thereby jeopardizing the Debtors' ability to maximize the value of their estates pursuant to the contemplated sales to the detriment of all stakeholders.  It is therefore essential that the Utility Services continue uninterrupted during these chapter 11 cases.

10.     On average, the Debtors pay approximately $1.2 million each month for Utility Services, calculated as the historical average cost for the 12-month period ending May 31, 2026.  As of the Petition Date, the Debtors owe approximately $275,000 on account of accrued and unpaid prepetition Utility Services.  To ensure the uninterrupted provision of essential Utility Services, the Debtors seek authority, but not direction, to continue to honor the obligations on account of their Utility Services as they come due in the ordinary course of business on a postpetition basis.

## II.    Proposed Adequate Assurance of Payment.

11.     The Debtors intend to timely pay undisputed postpetition obligations owed to the Utility Providers in the ordinary course of business during these chapter 11 cases.  The cash held by the Debtors, the cash generated in the ordinary course of the Debtors' business, and the Debtors' anticipated access to cash collateral and debtor-in-possession financing will provide the Debtors with sufficient liquidity to pay the Utility Providers for Utility Services in accordance with the Debtors' prepetition practices during the pendency of these chapter 11 cases.

12. To provide additional adequate assurance of payment, the Debtors propose to deposit $586,390 (the "Adequate Assurance Deposit") into a pre-existing,[5] segregated bank account (the "Adequate Assurance Account") no later than 15 business days after the Order is entered (or as soon as reasonably practicable thereafter). The Adequate Assurance Deposit represents an amount equal to approximately one half of the Debtors' historical average monthly cost of Utility Services, generally calculated as the historical average cost for the 12-month period ending May 2026, as detailed on Exhibit 1 of the Order. The Adequate Assurance Deposit will be held in the Adequate Assurance Account for the benefit of the Utility Providers until the earlier of: (a) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider; (b) the effective date of any chapter 11 plan confirmed in these chapter 11 cases; (c) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all the assets of the Debtors; or (d) such other time as the chapter 11 cases may be closed. The Adequate Assurance Deposit may be applied to any postpetition defaults in payment to the Utility Providers in accordance with the Adequate Assurance Procedures.

13. The Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations, cash on hand, and anticipated access to cash collateral and debtor-in-possession financing (collectively, the "Proposed Adequate Assurance"), demonstrates the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices and constitutes

---

[5] For a description of the Adequate Assurance Account, *see Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Maintain Existing Bank Accounts, Business Forms, and Books and Records, and (C) Continue Intercompany Transactions, (II) Granting Administrative Expense Status to Certain Postpetition Intercompany Transactions, and (III) Granting Related Relief*, filed contemporaneously herewith.

sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

**III.     The Adequate Assurance Procedures.**

14.     Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "Adequate Assurance Request") pursuant to the adequate assurance procedures set forth in the Order (the "Adequate Assurance Procedures").  The Adequate Assurance Procedures contemplate a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while allowing the Debtors to continue their business operations uninterrupted.  The Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon the Notice Parties (as defined in the Order).  The Debtors, in their sole discretion, may resolve any Adequate Assurance Request by mutual agreement with the Utility Provider without further order of the Court.  If the Debtors determine that the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors may seek resolution from the Court.  Absent compliance with the Adequate Assurance Procedures, the Utility Providers including, without limitation, those listed on the Utility Providers List, shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code and (b) prohibited from altering, refusing, or discontinuing Utility Services to, or otherwise discriminating against, the Debtors, on account of any unpaid prepetition charges or any perceived inadequacy of the Proposed Adequate Assurance.

**IV.     Modifications to the Utility Providers List.**

15.     The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Providers List.  To the extent that the Debtors

7

subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority, in their sole discretion and without further order of the Court, to amend the Utility Providers List to add or remove any Utility Provider.

16.     The Debtors further request that the relief requested in this Motion, including the proposed Adequate Assurance Procedures, and the Order shall apply to any Utility Provider subsequently added to the Utility Providers List (each, a "Subsequently Identified Utility Provider"), regardless of when such Utility Provider was added to the Utility Providers List.  For any Subsequently Identified Utility Provider, the Debtors will increase the Adequate Assurance Deposit as soon as reasonably practicable by an amount equal to approximately one half of the Debtors' average monthly cost from the Subsequently Identified Utility Provider, generally calculated as the historical average cost for the 12-month period ending May 31, 2026.  The Debtors will serve a copy of this Motion and the Order on any Subsequently Identified Utility Provider, and any Subsequently Identified Utility Provider shall have 21 days from the date of service of this Motion and the Order to make an Adequate Assurance Request.  The Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any Subsequently Identified Utility Provider's Adequate Assurance Request by mutual agreement with the Utility Provider without further order of this Court or shall schedule a hearing with this Court to determine the adequacy of the assurance payment in accordance with the proposed Adequate Assurance Procedures.

17.     For any Utility Provider that is subsequently removed from the Utility Providers List, the Debtors request the authority, in their sole discretion and without further order of the Court, to decrease the Adequate Assurance Deposit by an amount equal to approximately one half of the Debtors' average monthly cost for Utilities Services to the subsequently removed Utility

Provider. The Debtors will provide seven days' notice to the Utility Provider that it is being removed from the Utility Providers List and the corresponding amount in the Adequate Assurance Deposit will be deducted from the Adequate Assurance Account. If such Utility Provider objects to such removal, the Debtors may request a hearing before the Court.

18. The Debtors request that all Utility Providers, including any Subsequently Identified Utility Providers, be prohibited from (a) altering, refusing, or discontinuing any Utility Services to the Debtors, (b) discriminating against the Debtors, or (c) requiring payment of a deposit or receipt of any other security for continued service other than the Adequate Assurance Deposit as a result of these chapter 11 cases or any unpaid prepetition obligations absent further order of the Court.

**Basis for Relief**

19. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services or discrimination by utility providers after the Petition Date. In exchange, section 366(c)(2) of the Bankruptcy Code requires the debtor to provide "adequate assurance of payment" for postpetition services in a form "satisfactory" to the utility provider within 30 days of the petition date, or the utility provider may alter, refuse, or discontinue service. Section 366(c)(1)(A) of the Bankruptcy Code provides a non-exhaustive list of examples of "assurance of payment." Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtor's ability to pay. *See In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2 n.1 (Bankr. S.D. Tex. July 21, 2008) (citing *In re Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *3 n.3

(Bankr. S.D. Tex. Mar. 20, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service.")).

20.      When considering whether a given assurance of payment is "adequate," courts should examine the totality of the circumstances to determine whether the utility provider will be subject to an unreasonable risk of nonpayment.  *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (explaining that "adequate" assurance of payment must be determined based on the facts and circumstances of each case, balancing the interests of the utility and the debtor) (citing *In re Cunha*, 1 B.R. 330, 333 (Bankr. E.D. Va. 1979)).  In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."  *Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987), *abrogated on other grounds by In re Lease-A-Fleet, Inc.*, 131 B.R. 945 (Bankr. E.D. Pa. 1991)).

21.      Here, the Utility Providers are adequately assured against any risk of nonpayment for future services.  The Debtors endeavor to pay all utility bills on time in the ordinary course of business on a postpetition basis.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course of business provide assurance to the Utility Providers that the Debtors will pay their future obligations.  In contrast, termination of Utility Services could render the Debtors unable to operate their businesses, give rise to significant costs to restart disrupted operations, and permanently impair the value of the Debtors' estates to the detriment of all stakeholders.  *See In re Pilgrim's Pride Corp.,* No. 08-45664 (DML),

10

2009 WL 7313309, at*2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."). The termination or disconnection of Utility Services would also require key employees to divert their attention at this critical time to address the resulting operational disruptions, thereby impeding the forward progress of these chapter 11 cases.

22. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed in the Order, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of [section] 366 of the Bankruptcy Code allows the Court to adopt the [p]rocedures set forth in the [u]tility [o]rder"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*. Moreover, any rights that the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures because the Utility Providers may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. However, the Adequate Assurance Procedures "avoid a haphazard and chaotic process whereby each [Utility Provider] could make extortionate, last-minute demands for adequate assurance which the Debtors would be pressured to pay under the threat of losing critical utility service[s]." *See id.* at *6.

23. The Adequate Assurance Procedures are also reasonable and consistent with the purposes of section 366 of the Bankruptcy Code, and courts in this district routinely approve similar procedures. *See, e.g.*, *In re QVC Grp. Inc.*, No. 26-90447 (ARP) (Bankr. S.D. Tex.

11

Apr. 17, 2026) (approving an adequate assurance deposit equal to approximately half the debtors' monthly utility expenses and procedures for resolving utility providers' requests for additional adequate assurance on a final basis); *In re Nine Energy Service, Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 4, 2026) (same); *In re Kleopatra Finco S.Á R.L.* No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same).[6]

24. Further, the Court possesses the power under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve the Adequate Assurance Procedures and the Proposed Adequate Assurance.

### Emergency Consideration

25. Pursuant to Bankruptcy Local Rule 9013-1(f), the Debtors request emergency consideration of this Motion. By this Motion, the Debtors seek approval of the Adequate Assurance Procedures, which will streamline the process for providing adequate assurance of payment as contemplated by section 366 of the Bankruptcy Code. Accordingly, the Debtors respectfully submit that this Motion should be heard on an emergency basis so that the Debtors can comply with the requirements of section 366 of the Bankruptcy Code and such that the

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Adequate Assurance Procedures can be approved prior to the expiration of the period contemplated by section 366 of the Bankruptcy Code.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

26.     The Debtors will have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and the consensual use of cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, direct debit, wire transfer, ACH, or other payment requests in respect of the relief requested in this Motion.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

27.     The Debtors request that the Order include a finding that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exempt such relief from the 14-day stay under Bankruptcy Rule 6004(h).

**Modification of Bankruptcy Rule 2002(a)(2)**

28.     The Debtors request that the Court, for cause, modify the service requirements set forth in Bankruptcy Rule 2002(a)(2) to limit service of this Motion only to the core service list and affected creditors.  In light of the breadth and complexity of the Debtors' business, serving the Motion on all creditors, even those that are unaffected by the relief sought herein, would cause unnecessary confusion and expense to the detriment of all stakeholders.  Accordingly, sufficient cause exists under Bankruptcy Rule 2002(a)(2) to modify the service requirements for this Motion.

13

**Reservation of Rights**

29.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested in this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien (that arises under contractual rights, common law, statutory law, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates, including any lien that may be satisfied pursuant to the relief requested in this Motion, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

30.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Bank Lenders; (d) the Bank Agent; (e)  the Second Lien Lender; (f) the Equipment Loan Lenders; (g) holders of the Owner Notes; (h) the office of the attorney general for each of the states in which the Debtors operate; (i) the Internal Revenue Service; (j) any other governmental agencies having a regulatory or statutory interest in these chapter 11 cases; (k) the Utility Providers; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: July 27, 2026

/s/ John F. Higgins

| | |
|---|---|
| **PORTER HEDGES LLP** | **KIRKLAND & ELLIS LLP** |
| John F. Higgins (TX Bar No. 09597500) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| M. Shane Johnson (TX Bar No. 24083263) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Megan Young-John (TX Bar No. 24088700) | Christopher Marcus, P.C. (*pro hac vice* pending) |
| Joanna D. Caytas (TX Bar No. 24127230) | Maddison Levine (*pro hac vice* pending) |
| 1000 Main St., 36th Floor | 601 Lexington Avenue |
| Houston, Texas 77002 | New York, New York 10022 |

PORTER HEDGES LLP
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Joanna D. Caytas (TX Bar No. 24127230)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 228-1331
Email:          jhiggins@porterhedges.com
                sjohnson@porterhedges.com
                myoung-john@porterhedges.com
                jcaytas@porterhedges.com

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Maddison Levine (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                cmarcus@kirkland.com
                maddison.levine@kirkland.com

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

*Proposed Co-Counsel for the Debtors
and Debtors in Possession*

**Certificate of Accuracy**

In accordance with Bankruptcy Local Rule 9013-1(i), I certify that the foregoing statements are true and accurate to the best of my knowledge.

/s/ John R. Castellano
John R. Castellano

**Certificate of Service**

I certify that on July 27, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.   Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims and noticing agent.

/s/ John F. Higgins
John F. Higgins