**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, *et al.*,[1] | ) Case No. 26-90737 (CML) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO (A) FILE A CONSOLIDATED CREDITOR MATRIX,
(B) REDACT OR WITHHOLD CERTAIN CONFIDENTIAL
INFORMATION OF CUSTOMERS, AND (C) REDACT CERTAIN
PERSONALLY IDENTIFIABLE INFORMATION OF NATURAL
PERSONS, (II) APPROVING THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CHAPTER 11 CASES
AND OTHER INFORMATION, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 2:00 p.m. (prevailing Central Time) on July 27, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 27, 2026, at 2:00 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002.  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/RNDC.  The location of Debtor Republic National Distributing Company, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 4300 Wildwood Parkway, Suite 200, Atlanta, GA 30339.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):   (a) authorizing the Debtors to (i) file a consolidated creditor matrix (the "Consolidated Creditor Matrix"),[3] (ii) redact or withhold certain confidential information of Customers, and (iii) redact certain personally identifiable information of natural persons from their Consolidated Creditor Matrix, Consolidated Top 30 Creditors List, the Debtors' schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements"), the list of equity security holders (the "Equityholders List"), and other documents filed in these chapter 11 cases; (b) approving the form and manner of notifying creditors of the commencement of these chapter 11 cases and other information; and (c) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The

---

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John R. Castellano, Chief Restructuring Officer of Republic National Distributing Company, LLC and its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to such terms in the First Day Declaration or later in this Motion, as applicable.

[3]     Pursuant to Section E. Rule 11 and Section F. Rule 14(a) of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures"), in a complex chapter 11 bankruptcy case, the debtors must maintain a consolidated creditor matrix and must file a single, consolidated list of the 30 largest unsecured creditors (the "Consolidated Top 30 Creditors List") of all the jointly administered debtors.

Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105(a), 107, and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, 6003, 9007, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 1075-1, 9013-1(i), and 9037-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Complex Case Procedures.

**Background**

5.     Republic National Distributing Company, LLC (together with its Debtor and non-Debtor affiliates, the "Company") was, at its height, the nation's second largest alcoholic beverage distributor, operating across 40 states and specializing in wine and spirits distribution. Built on the strong foundation of three family-owned businesses, the Company historically enjoyed deep-seated relationships with over 2,000 suppliers and 170,000 customers across its expansive nationwide distribution network.  With headquarters in Atlanta, Georgia, the Debtors currently operate across 21 states and employ a workforce of approximately 1,460 employees.

6.     On July 26, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The Debtors are operating their businesses and managing their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## Basis for Relief

**I.     Authorizing the Debtors to File a Consolidated Creditor Matrix Is Warranted.**

7.     Bankruptcy Rule 1007(a)(1) requires a debtor to file "a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H[.]" Fed. R. Bankr. P. 1007(a)(1). Because the preparation of separate lists of creditors for each Debtor would be expensive, time consuming, and administratively burdensome, the Debtors respectfully request authority to file one Consolidated Creditor Matrix for all Debtors on the lead case docket instead of uploading a text file for each case to avoid duplicative notice. Such relief is permitted by Section F. Paragraph 14(a) of the Complex Case Procedures.

**II.     Redaction or Withholding of Certain Confidential Information of Customers Is Warranted.**

8.     Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, on request of a party in interest, to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). Pursuant to Bankruptcy Rule 9018, upon motion, "the court may, with or without notice, issue any order that justice requires to . . . protect the estate or any entity regarding a trade secret or other confidential research, development, or commercial information; [or] protect an entity from scandalous or defamatory matter in any document filed in a bankruptcy case[.]" Fed. R. Bankr. P. 9018(a)(1), (2). The Court has broad authority to issue such an order. *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003) ("When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad—'any order which justice requires.' The Court notes that the authority

4

goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice.").

9. Courts frequently define "commercial information" as information that would provide "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Faucett*, 438 B.R. 564, 567 (Bankr. W.D. Tex. 2010) (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 75–76 (Bankr. D. Del. 2006) (same); *In re Glob. Crossing Ltd.*, 295 B.R. at 725 ("The whole point of [Fed. R. Bankr. P. 9018(a)(1)] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury."). Commercial information also encompasses "situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors." *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (internal citation and quotation marks omitted); *see also In re Lomas Fin. Corp.*, No. 90 Civ. 7827, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (finding that "commercial information" under section 107(b)(1) is broader than merely the "information that may give a debtor's competitors an unfair advantage").

10. One of the Debtors' most critical assets is their customer database and related customer data, which is comprised of the names of individuals and entities, email addresses, physical addresses, and telephone numbers (collectively, the "<u>Customer List</u>") of the Debtors' customers (collectively, the "<u>Customers</u>"). [4] The Customer List constitutes confidential "commercial information" as used in section 107(b)(1) of the Bankruptcy Code. *See, e.g.*, *Faucett*,

---

[4] The Debtors are providing notice to current Customers and Customers who have transacted with the Debtors in the two years preceding the Petition Date. Nothing herein shall be construed as an admission that any Customer is a "creditor" as defined in the Bankruptcy Code, and the Debtors expressly reserve all rights with respect thereto.

438 B.R. at 568 (finding that certain of the debtor's customer information could be used by the debtor's competitors and thus should be protected under section 107(b) of the Bankruptcy Code); *In re Northstar Energy*, *Inc.*, 315 B.R. 425, 429–30 (Bankr. E.D. Tex. 2004) (noting that disclosure of the debtors' investor list "would expose the heart and soul" of the debtors' commercial operations and warranted protection under section 107(b) of the Bankruptcy Code); *In re FTX Trading Ltd.*, No. 23-682 (CFC), 2024 WL 4948827, at *8–9 (D. Del. Dec. 3, 2024) (finding that the debtors' customer list fell within the ambit of section 107(b)(1) of the Bankruptcy Code); *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 632 (Bankr. S.D.N.Y. 2023) (finding the same and collecting cases where courts have held that customer lists constitute confidential commercial information).

11.     It is vital that the Debtors maintain the Customer List in strict confidence.  The Debtors are a leading distributor of wholesale alcoholic beverages, competing in a highly specialized market.  The Debtors must preserve their existing customer relationships in order to continue operating in the ordinary course of business and to maximize the value of their businesses through the proposed sales.  Publicly distributing the Customer List in exchange for no renumeration would provide the Debtors' competitors with valuable and competitively sensitive information about the Debtors' commercial operations, destroy value, and undermine the Debtors' ongoing sale efforts.  If the Customer List is disclosed, the Debtors' competitors would inevitably launch broad solicitation campaigns, significantly increasing the risk of Customer attrition and distracting the Debtors from their sale efforts.  Given the commercial importance to the Debtors' restructuring efforts of keeping the Customer List confidential, the Debtors seek to redact the

6

Customer List to avoid the damage to the Debtors' estates that would likely result from any such disclosure.

12.     Where, as here, the Customers' identities and contact information constitute valuable, proprietary, and confidential commercial information, bankruptcy courts in this district have authorized debtors to redact the names and other identifying information of debtors' customers or such other commercially sensitive information.  *See In re QVC Grp., Inc.*, No. 26-90447 (ARP) (Bankr. S.D. Tex. Apr. 17, 2026) (authorizing the debtors to redact and file under seal the names, email addresses, physical addresses, and telephone numbers of their customers from any filings with the Court or made publicly available in their chapter 11 cases); *In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (same); *In re Kleopatra Finco S.à. r.l.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same). [5]

13.     Cause therefore exists pursuant to section 107(b)(1) of the Bankruptcy Code to authorize the Debtors to redact the names and all associated identifying information of their Customers from any paper filed or to be filed with the Court or otherwise made public in these chapter 11 cases, as applicable, including the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, and the Schedules and Statements.  The Debtors will, on a confidential basis, make the unredacted version of the Customer List and any other related filings that are redacted pursuant to the Order available upon request to the Court, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), counsel to any official committee appointed in these chapter 11 cases on a professional-eyes-only basis, and Omni Agent Solutions, Inc. ("Omni")

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

as the proposed claims and noticing agent (the "Claims and Noticing Agent").  The unredacted version of the Customer List and any related filings redacted pursuant to this Order shall not be made available to any other party without the consent of the Debtors or further order of this Court. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document.  Nothing requested herein is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Order.  The Debtors propose that Omni undertake all service on any party whose identity and/or address is redacted pursuant to the Order.

### III.    Redaction of Certain Personally Identifiable Information of Natural Persons Is Warranted.

14.    Section 107(c)(1) of the Bankruptcy Code provides that the Court:

[F]or cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

(A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].

(B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

15.    Bankruptcy Local Rule 9037-1(b) further recognizes that "[c]ertain documents are routinely redacted to remove personal identifying information or other content that is not relevant to a decision by the Court."  This rule provides that:  "[i]n those instances, (i) the document may be filed in redacted form only; (ii) no document should be filed that contains the redacted information; and (iii) the balance of this Rule 5003-1 [sic] does not apply."  Bankruptcy Local Rule 9037-1(b).

16.    Further, the Debtors submit that that the names, home addresses, and email

8

addresses of natural persons fit squarely within section 1028(d)(7)(A) of title 18 of the United States Code and that disclosure of such information would create an undue risk of identity theft contemplated by section 107(c).

17. In addition, privacy and data protection regulations have been enacted in key jurisdictions in which the Debtors and their non-Debtor affiliates do business. For example, in 2025, the Texas Data Privacy and Security Act (the "TDPSA")[6] took effect. The TDPSA provides certain privacy protections relating to the "personal data" of Texas residents who are consumers of companies that "conduct business in [Texas] or produce a product or service consumed by residents of [Texas]" and that collect, use, store, sell, share, analyze, or process consumers' personal data. Tex. Bus. & Com. Code § 541. "Personal data" generally means, any information, including sensitive data, that is linked or reasonably linkable to an identified or identifiable individual. *See id.* Prohibitions include a company processing personal data without first obtaining a consumer's consent. Tex. Bus. & Com. Code § 541.101. In addition, the TDPSA provides Texas residents the right to, among other things, request that their collected personal data be deleted by entities subject to the regulation and opt out of the processing of their personal data

---

[6] Many other states, including states in which the Debtors and their non-Debtor affiliates do business, have enacted similar privacy laws. *See also* Connecticut Act Concerning Personal Data Privacy and Online Monitoring, Public Act § 22-15 (effective on July 1, 2023); Utah Consumer Privacy Act, Utah Code § 13-61 (effective on Dec. 31, 2023); Oregon Consumer Privacy Act, Or. Rev. Stat. § 646A.570-646A.589 (effective on July 1, 2024); Montana Consumer Data Privacy Act, Mont. Code Ann. § 30-14-2801–30-14-2817 (effective on Oct. 1, 2024); Delaware Personal Data Privacy Act, 6 Del. C. § 12D (effective on Jan. 1, 2025); Iowa Consumer Data Protection Act, Iowa Code § 715D (effective on Jan. 1, 2025); New Hampshire Data Privacy Act, N.H. Rev. Stat. § 507-H (effective on Jan. 1, 2025); Nebraska Data Privacy Act, Neb. Rev. Stat. §§ 87-1101 to 87-1130 (effective on Jan. 1, 2025); New Jersey Data Privacy Law, N.J. Rev. Stat. §§ 56.8-166.4–56.8-166.19 (effective on Jan. 15, 2025); Tennessee Information Protection Act, Tenn. Code Ann. § 47-18-33 (effective on July 1, 2025); Minnesota Consumer Data Privacy Act, Minn. Stat. § 325M (effective on July 31, 2025); Rhode Island Data Transparency and Privacy Protection Act, R.I. Gen. Laws § 6-48.1 (effective on Jan. 1, 2026); Indiana Consumer Data Protection Act, Ind. Code § 24-15 (effective on Jan. 1, 2026); Kentucky Consumer Data Protection Act, Ky. Rev. Stat. Ann. § 367.3611–367.3629 (effective on Jan. 1, 2026), the Oklahoma Data Privacy Act, Okla. Stat. tit. 75A, §§ 300-320 (effective on Jan. 1, 2027); and the Alabama Personal Data Protection Act, 2026 Ala. Acts No. 2026-552 (H.B. 351) (effective on May 1, 2027).

for the purpose of its sale.  Tex. Bus. & Com. Code § 541.  Violators risk injunctions and civil penalties of up to $7,500 for *each* violation.  Tex. Bus. & Com. Code § 541.155.  The TDPSA applies to all for-profit entities that conduct business in Texas (collectively, the "TDPSA Entities"), process consumers' personal data, and are not:  (a) state agencies; (b) small businesses; (c) financial institutions; (d) certain utility providers; (e) universities; or (f) certain healthcare entities.  Tex. Bus. & Com. Code § 541.002.  The Debtors qualify as TDPSA Entities because they conduct business with Texas institutions, are headquartered in Texas, and they are not classified as small businesses because the Debtors have more than 250 employees.[7]

18.     Additionally, other key jurisdictions have privacy and data protection regulations that may also apply to the Debtors.  For example, the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR"), and similar laws in other jurisdictions impose significant constraints on the processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names and home and email addresses of individuals and individual business contacts) (collectively, the "Personal Data").  Both the UK GDPR and EU GDPR apply to the processing of Personal Data in the context of an establishment of a controller or processor in the United Kingdom or the European Economic Area, respectively, regardless of whether the processing takes place in the United Kingdom or the European Economic Area (and, in some circumstances, the UK GDPR

---

[7]    In the United States, businesses with a North American Industry Classification System (NAICS) code of 424820 and NAICS industry description of "Wine and Distilled Alcoholic Beverage Merchant Wholesalers" are not classified as small business if they employ more than 250 people.  *See* U.S Small Business Administration, *Table of Small Business Size Standards*, https://www.sba.gov/document/support-table-size-standards (last visited Jan. 3, 2026).

and EU GDPR apply to organizations established in other countries if they process Personal Data relating to individuals located in the United Kingdom or European Economic Area).

19.     The UK GDPR and EU GDPR require a legal basis for all processing (including disclosure) of Personal Data.  The only possible legal basis that may apply for disclosing Personal Data in this instance would be the "legitimate interests" ground.  *See* Art. 6(1)(f) UK GDPR and EU GDPR.  The "legitimate interests" ground, however, can only be relied on as a legal basis if the processing is necessary to achieve a relevant purpose.  If, however, the same result can reasonably be achieved in a less intrusive way, the "legitimate interests" ground no longer applies.  Additionally, the "legitimate interests" ground cannot serve as a legal basis if the rights and freedoms of the relevant individuals override the legitimate interest in question.  UK and EU regulators take the position that if a person would not reasonably expect the processing, his or her interests are likely to override any legitimate interests.  *See id.*[8]  Moreover, the legal basis of "compliance with a legal obligation" under Article 6(1)(c) of the UK GDPR and EU GDPR would not be applicable here, since such basis is restricted to legal obligations under UK or EU law, and not foreign laws such as the Bankruptcy Code.

20.     In addition, processing (including disclosure) under the UK GDPR and EU GDPR must comply with certain key principles, including the principle of data minimization, which requires that any processing must be necessary relative to its purpose.  Disclosure of the unredacted names, home and email addresses, or other Personal Data of individual creditors on the public docket is not necessary for the purpose of reviewing the claim amounts of individual creditors in connection with a chapter 11 plan or administering these chapter 11 cases, and the Debtors'

---

[8]     *See* Information Commissioner's Office, *Legitimate Interests*, https://ico.org.uk/for-organisations/uk-gdpr-guidance-and-resources/lawful-basis/a-guide-to-lawful-basis/legitimate-interests/ (last visited Dec. 21, 2025).

proposed redaction would be a less intrusive way of achieving this purpose.  The right of individual creditors to not have their unredacted names and home and email addresses disclosed on the public docket would also override the legitimate interest of disclosing such information to facilitate these chapter 11 cases.  By redacting the Personal Data on the public docket, the Debtors are complying with their obligation under the Bankruptcy Code, protecting individuals' interests and right to privacy, and abiding by one of the foundational principles of the UK GDPR and EU GDPR by opting for the least intrusive way to reasonably achieve their desired result.  *See* Art. 5(1)(c) UK GDPR and EU GDPR.[9]

21.  Violations of the EU GDPR and UK GDPR risk severe penalties.  If an organization is found to have processed information in breach of the EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4 percent of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.  *See* General Data Protection Regulation (EU) 2016/679, art. 83(5).[10]  Similarly, for a breach of the UK GDPR, the organization may be fined up to the higher of £17,500,000 or 4 percent of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.  *See* United Kingdom Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc.)) (EU Exit) Regulations 2019.  The EU GDPR and the UK GDPR apply to the Debtors, as, in the ordinary course of business, the Debtors and their non-debtor subsidiaries and affiliates

---

[9]  Art. 5(1)(c) UK GDPR and EU GDPR ("Personal data shall be: . . . (c) adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed ('data minimisation').").

[10]  Indeed, on August 26, 2024, the Dutch Data Protection Authority fined Uber €290 million for transferring the personal data of European drivers to United States servers in violation of the EU GDPR.  *See Dutch DPA Imposes a Fine of 290 Million Euro on Uber Because of Transfers of Drivers' Data to the US*, Autoriteit Persoonsgegevens [Dutch Data Prot. Auth.] (Aug. 26, 2024), https://www.autoriteitpersoonsgegevens.nl/en/current/dutch-dpaimposes-a-fine-of-290-million-euro-on-uber-because-of-transfers-of-drivers-data-to-the-us.  And, on May 12, 2023, the Data Protection Commission of Ireland fined Facebook (Meta Ireland) €1.2 billion for improperly transferring data to the United States under the EU GDPR.  *See* In re Meta Platforms Ireland Ltd., Reference No. IN-20-8-1 (Ir. Data Prot. Comm'n May 12, 2023).

domiciled in the UK and EU routinely process data relating to their creditors in connection with, among other things, employees, customers, and suppliers in member states of the European Economic Area or the United Kingdom.

22.     The Debtors therefore request authority to redact from any paper filed or to be filed with the Court in these chapter 11 cases, including, but not limited to, the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Schedules and Statements, proofs of claim, and any related affidavits of service, the names, home and email addresses, and other personally identifiable information of all natural persons—including the Debtors' current and former employees, customers, other creditors, and individual equityholders.   This relief is requested because (a) such personally identifiable information can be used to perpetrate identity theft[11] and phishing scams or to locate survivors of domestic violence, harassment, or stalking under section 107(c)(1) of the Bankruptcy Code and (b) disclosure of such personally identifiable information

---

[11]   *See In re Endo Int'l PLC*, No. 22-22549 (JLG), 2022 WL 16640880, at *10–12 (Bankr. S.D.N.Y. Nov. 2, 2022) (taking "judicial notice of the fact that identity theft is a world-wide problem," recognizing that the right of public access to judicial records "is not absolute," and authorizing the debtors to redact the names, home addresses, and email addresses of certain litigation claimants located in the US, EU, UK, and Australia from any paper filed with that court and/or otherwise made publicly available by the debtors and the claims and noticing agent thereof); *see also In re FTX Trading Ltd.*, 2024 WL 4948827, at *11 (affirming the bankruptcy court's ruling to permanently redact the names, home addresses, and email addresses of natural persons finding that "[t]hese millions of customers would, absent the relief granted by the Bankruptcy Court, have their identities revealed without their consent (and in many cases without their knowledge)."); *In re Genesis Glob. Holdco, LLC*, 652 B.R. at 635–38 (quoting *Endo* and finding that "[h]ome addresses fall within that category of information, as it is taken as a 'given' that they constitute personally identifiable information that is vital information to perpetrators of identity theft, stalking and intimate partner violence alike, and that publishing such information facilitates an identity thief's search for data and a stalker's or abuser's ability to find his or her target" and that "an undue risk of identity theft or other unlawful injury exists to the [i]ndividual [creditors] should their names, addresses, or other contact information be released in the[] bankruptcy cases. . . .   [R]edaction of the [i]ndividual [creditor's] names is important, because contact information—including home addresses—could easily be found on the internet through the use of their names.").

or Personal Data risks violating domestic and foreign data and privacy laws and regulations, thereby exposing the Debtors to potential civil liability and significant financial penalties.

23.     Redaction is necessary to protect information that would create an "undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1). The risk is real and not merely speculative. In at least one chapter 11 case in Delaware, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that was previously not publicly available, forcing the employee to change addresses again.[12] More recently, in a chapter 11 case in the Southern District of New York, at least fifteen phishing scams have been publicized.[13] These phishing incidents targeted individuals whose names were publicized in the creditor matrix, including one in which scammers modified a court order and sent it to individuals whose names were disclosed, two where scammers posed as associates of debtors' counsel using fake email accounts purportedly from debtors' counsel and requested that individual creditors reply with their account and other personal information, and many where scammers posed as the debtors' claims agent and requested the same information from individual creditors. These scams took place even though the bankruptcy court authorized the redaction of creditor email addresses. These events also suggest that disclosure of Personal

---

[12]   The incident, which took place during the first Charming Charlie chapter 11 case in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019) [Docket No. 4].

[13]   *See In re Celsius Network, LLC*, No. 22-10964 (MG), Docket Nos. 1527, 1681, 1904, 1992, 2082, 2896, 3121, 3251, 3422, 3722, 3932, 4070, 4763, 7729, and 7886.

Data would not satisfy a legitimate interest assessment and would not be compliant with the minimization principle under the UK GDPR and the EU GDPR.

24.     Courts in this district have granted the relief requested herein in comparable chapter 11 cases. *See, e.g.*, *In re QVC Grp., Inc.*, No. 26-90447 (ARP) (Bankr. S.D. Tex. Apr. 17, 2026) (authorizing the debtors to redact and file under seal the names, email addresses, physical addresses, and telephone numbers of their customers from any filings with the Court or made publicly available in their chapter 11 cases); *In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (same); *In re Kleopatra Finco S.à. r.l.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same).

25.     For these reasons, the Debtors submit that cause exists to authorize the Debtors to redact, pursuant to section 107(c)(1) of the Bankruptcy Code, and in compliance with applicable privacy or data protection laws and regulations, the names, home addresses, and email addresses of natural persons listed on the Consolidated Creditor Matrix, the Consolidated Top 30 Creditors List, the Equityholders List, the Schedules and Statements, proofs of claim, any related affidavits of service, or any other document filed with the Court.   Absent such relief, the Debtors (a) may be in violation of applicable data privacy or data protection laws and regulations, thereby exposing the Debtors to severe monetary penalties that could threaten the Debtors' operations during this sensitive stage of their restructuring, (b) would unnecessarily render individuals more susceptible to identity theft and phishing scams, and (c) could jeopardize the safety of current and former employees, independent contractors, and other individual creditors, Customers, and equityholders who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by

15

publishing their home and email addresses without any advance notice or opportunity to opt out or take protective measures.

26. The Debtors will, on a confidential basis, make the unredacted versions of the Consolidated Creditor Matrix, Consolidated Top 30 Creditors List, the Equityholders List, the Schedules and Statements, and any other filings redacted pursuant to the proposed Order available upon request to (a) this Court via filing unredacted copies under seal, (b) the U.S. Trustee, (c) counsel to any official committee appointed in these chapter 11 cases, (d) counsel to the Bank Agent, (e) counsel to Coöperatieve Rabobank U.A., New York Branch, and (f) Omni. The unredacted versions of the Consolidated Creditor Matrix, Consolidated Top 30 Creditors List, the Equityholders List, the Schedules and Statements, and any other applicable filings redacted pursuant to the proposed Order shall not be made available to any other party without the consent of the Debtors or further order of this Court, *provided* that any receiving parties shall maintain such unredacted document and underlying information in strict confidence and shall not transfer or otherwise provide such unredacted document or underlying information to any person or entity that is not a party to such request and the receiving party shall agree that the unredacted version(s) of the documents will be maintained in strict confidence. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document. In each case, this would be subject to a review of whether such disclosure, on a case-by-case basis, would violate any obligation under the UK GDPR, EU GDPR, or any other any privacy or data protection law or regulation. Nothing requested herein is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Order. The Debtors propose that Omni undertake all service on any party whose identity and/or address is redacted pursuant to the Order. The Debtors, through Omni, will also distribute, as applicable, any notices

that are received at the Debtors' corporate headquarters and that are intended for a current employee.  Furthermore, to the extent notice and/or service by mail (as opposed to email) is required or requested, the Debtors will instruct Omni to serve individuals at their home addresses, ensuring that each individual will receive the same notices in these chapter 11 cases as all other creditors without the unnecessary public disclosure of his or her home address.

**IV.      Service of Required Notices to Creditors Is Appropriate and Should Be Approved.**

27.      Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk or the court's designee must give the debtor, the trustee, all creditors, and all indenture trustees at least 21 days' notice by mail of:  (1) the meeting of creditors under § 341 or § 1104(b)[.] [of the Bankruptcy Code] . . . ."  Fed. R. Bankr. P. 2002(a).  Bankruptcy Rule 2002(f) provides that notice of the order for relief shall be sent by mail to all creditors.  *See* Fed. R. Bankr. P. 2002(f).

28.      The Debtors propose that Omni undertake all mailings and email service, as applicable, directed by the Court or the U.S. Trustee or as required by section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f), including the notice of commencement of these chapter 11 cases, substantially in the form attached to the Order as Exhibit A (the "Notice of Commencement"), on all parties listed on the Consolidated Creditor Matrix to advise them of the meeting of creditors under section 341 of the Bankruptcy Code.  Service of the Notice of Commencement on the Consolidated Creditor Matrix will not only avoid confusion among creditors but will also prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Consolidated Creditor Matrix and will sufficiently advise such parties of the commencement of these chapter 11 cases and the meeting of creditors under section 341 of the Bankruptcy Code.

29.      The Debtors believe that using Omni to promptly provide notices to all applicable parties will maximize efficiency in administering these chapter 11 cases and will ease

17

administrative burdens that would otherwise fall upon the Court and the U.S. Trustee. Additionally, Omni will assist the Debtors in preparing creditor lists and mailing or emailing initial notices and other notices in these chapter 11 cases. Therefore, it is more efficient to authorize Omni to undertake the mailing or email service, as applicable, of the Notice of Commencement of these chapter 11 cases. Accordingly, the Court should authorize Omni to undertake such mailings and email service, as courts in this district have done in other comparable chapter 11 cases. *See, e.g.*, *In re QVC Grp., Inc.*, No. 26-90447 (ARP) (Bankr. S.D. Tex. Apr. 17, 2026) (authorizing the debtors' claims and noticing agent to notify creditors of the commencement of the chapter 11 cases and other information); *In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (same); *In re Kleopatra Finco S.à. r.l.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same).

30.     The Debtors further request authority to distribute notices in these chapter 11 cases to parties in interest via email in lieu of mailing. Although the Bankruptcy Rules generally require notices to be served on creditors at physical mail addresses, the Bankruptcy Rules confer significant latitude on bankruptcy courts to modify the manner in which notice is given. *See* Fed. R. Bankr. P. 2002(m) and 9007. Here, serving notices by traditional mail is cost-prohibitive given the size of the Debtors' creditor matrix and limited estate resources that are available to fund these chapter 11 cases. Further, email is the primary channel through which many of the Debtors' creditors and Customers exchange messages with the Debtors. Indeed, the Debtors do not maintain records of mailing addresses for many parties in interest. Where a party has frequently communicated by email, courts have held that serving such party by email comports with the requirements of due process. *See Rio Props. Inc.,* 284 F.3d 1007, 1018 (9th Cir. 2002)

18

(holding that when a party has "embraced" email as a method of communication, serving such party by email is appropriate). Accordingly, the Debtors request authority to serve all required notice (and other documents) by email. In the event the Debtors do not have an email address for a party in interest, the Debtors will send any such notices and documents by first class mail. In other large chapter 11 cases, courts in this district have allowed debtors to distribute notices to parties in interest via email in lieu of mailing. *See, e.g.*, *In re QVC Grp., Inc.*, No. 26-90447 (ARP) (Bankr. S.D. Tex. Apr. 17, 2026) (authorizing the debtors to distribute notices to parties in interest via email in lieu of mail); *In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (same); *In re Kleopatra Finco S.à. r.l.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sep. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same).

## Emergency Consideration

31.    In accordance with Bankruptcy Local Rule 9013-1 and section G of the Complex Case Procedures, the Debtors request emergency consideration of this Motion. This Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date. The relief will save costs and avoid undue administrative burden and confusion only if granted immediately. The Debtors, therefore, request that the Court approve the relief requested in this Motion on an emergency basis.

## Notice

32.    The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the

19

Debtors (on a consolidated basis); (c) the Bank Lenders; (d) the Bank Agent; (e) the Second Lien Lender; (f) the Equipment Loan Lenders; (g) holders of the Owner Notes; (h) the office of the attorney general for each of the states in which the Debtors operate; (i) the Internal Revenue Service; (j) any other governmental agencies having a regulatory or statutory interest in these chapter 11 cases; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: July 27, 2026

*/s/ John F. Higgins*

| | |
|---|---|
| **PORTER HEDGES LLP** | **KIRKLAND & ELLIS LLP** |
| John F. Higgins (TX Bar No. 09597500) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| M. Shane Johnson (TX Bar No. 24083263) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Megan Young-John (TX Bar No. 24088700) | Christopher Marcus, P.C. (*pro hac vice* pending) |
| Joanna D. Caytas (TX Bar No. 24127230) | Maddison Levine (*pro hac vice* pending) |
| 1000 Main St., 36th Floor | 601 Lexington Avenue |
| Houston, Texas 77002 | New York, New York 10022 |

| | | |
|---|---|---|
| Telephone: | (713) 226-6000 | |
| Facsimile: | (713) 228-1331 | |
| Email: | jhiggins@porterhedges.com | |
| | sjohnson@porterhedges.com | |
| | myoung-john@porterhedges.com | |
| | jcaytas@porterhedges.com | |

| | | |
|---|---|---|
| Telephone: | (212) 446-4800 | |
| Facsimile: | (212) 446-4900 | |
| Email: | joshua.sussberg@kirkland.com | |
| | cmarcus@kirkland.com | |
| | maddison.levine@kirkland.com | |

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

## Certificate of Accuracy

In accordance with Bankruptcy Local Rule 9013-1(i), I certify that the foregoing statements are true and accurate to the best of my knowledge.

/s/ *John R. Castellano*

John R. Castellano

## Certificate of Service

I certify that on July 27, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.   Additionally, the foregoing document will be served as set forth  in  a  forthcoming affidavit filed by the Debtors' proposed Claims and Noticing Agent.

/s/ *John F. Higgins*

John F. Higgins