**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, *et al.*,[1] | ) ) ) | Case No. 26-90737 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DECLARATION OF JOHN R. CASTELLANO**
**IN SUPPORT OF THE DEBTORS' <u>EMERGENCY</u>**
**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION**
**FINANCING, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH**
**SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING**
**THE USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY,**
**(V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

I, John R. Castellano, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer of each of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>," and together with their non-Debtor affiliates, the "<u>Company</u>" or "<u>RNDC</u>") and a Managing Director at AlixPartners, LLP ("<u>AlixPartners</u>"), the proposed financial advisor to the Debtors in these chapter 11 cases.[2] I was appointed as Chief Restructuring Officer at Republic National Distributing Company, LLC on December 21, 2025,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/RNDC. The location of Debtor Republic National Distributing Company, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 4300 Wildwood Parkway, Suite 200, Atlanta, GA 30339.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John R. Castellano, Chief Restructuring Officer of Republic National Distributing Company, LLC and Its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not immediately defined in this Declaration shall have the meanings ascribed to such terms in the First Day Declaration, the Motion, or the Interim Order.

and subsequently to the remaining Debtor entities on June 25, 2026.  Prior to becoming Chief Restructuring Officer, I advised the Company in my capacity as Managing Director of AlixPartners beginning in September 2025.

2.      I have 30 years of experience in restructuring and bankruptcy-related matters and have served as a financial advisor to both public and private companies, specializing in advising companies, lenders, creditors, corporate boards, and equity sponsors across a wide range of industries, both domestically and internationally.  I have undertaken both advisory and executive roles, including roles as Chief Restructuring Officer, Chief Financial Officer, and interim Chief Executive Officer.

3.      Previously, I worked at Ernst & Young LLP in its Assurance practice as an auditor, and in its Consulting practice focusing on restructuring advisory services.  I hold a bachelor's degree in Accounting from DePaul University and a master's degree in Management, Finance, and Strategy from the Kellogg School of Management at Northwestern University.

4.      I have served as a Managing Director in AlixPartners' Turnaround & Restructuring Group since 2007.  AlixPartners is a global independent restructuring consulting firm that has a wealth of experience in providing restructuring advisory services, and has assisted and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases.  Specifically, AlixPartners' core turnaround and restructuring services include interim management and executive-level roles; liability management; liquidity management; lender and creditor advisory; and bankruptcy, insolvency, and case management.  Since its inception in 1981, AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided restructuring or crisis management services in numerous large chapter 11 cases.

5.      I have acted as the Chief Restructuring Officer (or in an equivalent role) of the following entities during their chapter 11 proceedings:  *In re Office Properties Income Trust*, No. 25-90530 (CML) (Bankr. S.D. Tex. 2025); *In re Steward Health Care System LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. 2024); *In re Aearo Technologies, LLC*, No. 22-02890 (JJG) (Bankr. S.D. Ind. 2022); *In re Footprint Power Salem Harbor Development LP*, No. 22-10239 (MFW) (Bankr. D. Del. 2022); *In re Alpha Latam Management, LLC*, No. 21-11109 (JKS) (Bankr. D. Del. 2021); *In re Lonestar Resources US Inc.*, No. 20-34805 (DRJ) (Bankr. S.D. Tex. 2020); *In re McDermott International, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. 2020); and *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. 2019).

6.      I submit this declaration (this "Declaration") in support of the relief requested in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "Motion"), filed contemporaneously herewith, which seeks authority to, among other things:  (a) obtain senior secured superpriority debtor-in-possession financing, consisting of $75 million of new money revolving loans, of which $50 million will be made available upon entry of the Interim Order, and (b) immediately access the Cash Collateral on a consensual basis.[3]

7.      I am involved with the Debtors' day-to-day operations and familiar with the Debtors' history, business and financial affairs, books and records, and the circumstances leading

---

[3]   For the avoidance of doubt, any description of the proposed terms of the DIP Facility herein or in the Motion is qualified in its entirety by the terms of the DIP Credit Agreement, the Interim Order, and the other DIP Loan Documents.  To the extent anything in this Declaration is inconsistent with such documents, the terms of the applicable documents shall control.

3

to the commencement of these chapter 11 cases.  Except where specifically noted, the statements in this Declaration are based on:  (a) my personal knowledge; (b) information provided to me by the Company's management team, employees, and the Advisors; (c) my review of relevant documents and information concerning the Company's operations, financial affairs, and restructuring initiatives; or (d) my opinions based upon my experience and knowledge.  I am over the age of 18, and if called upon to testify, I could and would testify competently to the facts set forth herein.  I am not being compensated separately for this Declaration or any testimony in connection herewith.

8.      I am familiar with the DIP Facility, its material terms, and the Debtors' immediate liquidity needs.  As described below, it is my opinion that the Debtors require immediate access to the liquidity provided by the proposed DIP Facility to pay the costs necessary to administer these chapter 11 cases, operate their businesses, pay employees, pursue sales of the Debtors' remaining assets, and thereafter effectuate an orderly wind-down of the Debtors' businesses.

**AlixPartners Retention**

9.      The Debtors engaged AlixPartners in September 2025 to serve as their financial advisor in connection with the Debtors' evaluation of various strategic and business alternatives, restructuring initiatives, and liquidity management.  Immediately following its engagement, AlixPartners began obtaining diligence from the Debtors and evaluating the Debtors' operations and near-term liquidity requirements for potential strategic alternatives and, subsequently, for the debtor-in-possession financing process.  AlixPartners, under my supervision, has worked closely with the Debtors' other Advisors and key members of the Debtors' businesses—including, but not limited to, members of the treasury, finance, legal, human resources, and operations leadership teams—to evaluate and understand the Debtors' cashflows, financial reporting, and general

operations, and become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

10.     As part of an evaluation of the Debtors' liquidity position and cash requirements to operate their businesses, AlixPartners assisted in the development of the Debtors' 13-week and long-term cash flow forecasts.  These forecasts take into account anticipated cash receipts and disbursements during the projected period and consider the effects of the chapter 11 filing, including incremental administrative costs of a complex chapter 11 filing with a large number of diverse stakeholders, required supplier and vendor payments, including under the TSAs, and the anticipated proceeds from the potential private sales for the Debtors' remaining operations.

### The Debtors' Prepetition Capital Structure

11.     As of the Petition Date, the Debtors had approximately $540 million in aggregate principal amount and accrued interest and fees outstanding under their funded debt obligations. The following table sets forth the Debtors' prepetition capital structure:

| Prepetition Capital Structure (as of July 2026) | | |
| --- | --- | --- |
| **Secured Funded Debt** | | |
| *Debt Instrument* | *Maturity* | *Principal and Interest Outstanding ($ millions)* |
| **Prepetition Term Loan Facility** | November 1, 2026 | $66.3 |
| **Prepetition ABL Facility (incl. Prepetition FILO Revolver)** | November 1, 2026 | $158.6 |
| **Second Lien Facility** | January 31, 2028 | $260.4 |
| **Equipment Loans** | Various | $7.0 |
| *Total Secured Funded Debt Outstanding* | | $492.4 |
| **Unsecured Funded Debt** | | |
| *Facility* | *Maturity* | *Principal and Interest Outstanding ($ millions)* |
| **Owner Notes** | On Demand | $47.7 |
| *Total Unsecured Funded Debt Outstanding* | | $47.7 |
| *Total Funded Debt Outstanding* | | **$540.0 million** |

**The Debtors' Immediate Need for Access to the DIP Facility and Cash Collateral**

12.     I am familiar with the DIP Facility, the material terms thereof, and the Debtors' immediate liquidity needs.  The Debtors enter these chapter 11 cases due to significant financial and operational challenges brought on by a series of macroeconomic, industry-wide, and Company-specific challenges, which placed the Debtors in an acute liquidity crisis.  As further described in my First Day Declaration, over the last nine months the Debtors explored all available strategic alternatives to address their financial challenges, including value-maximizing going-concern sales for the Debtors' operations, and implemented extensive cost-cutting initiatives.  Despite these efforts, the Debtors enter these chapter 11 cases with approximately $5.3 million of cash on hand—all of which constitutes Cash Collateral and an amount insufficient for the Debtors to maintain, let alone maximize, the value of their estates during the pendency of these chapter 11 cases.  Accordingly, based on my experience in the restructuring industry generally and my experience with the Debtors in particular, I believe that approval of the proposed DIP Facility and continued use of Cash Collateral is essential to avoid immediate and irreparable harm to the Debtors and their estates.

13.     I believe the Debtors require immediate use of Cash Collateral and access to the incremental liquidity provided by the DIP Facility to, among other things, fund the Debtors' continued going-concern sale processes, wind-down efforts, and the limited continued operations necessary to effectuate the foregoing.  Absent immediate access to the DIP Facility and the continued use of Cash Collateral, the Debtors will lack the funds necessary to meet their immediate working capital and business operating needs, thereby threatening, among other things, the Debtors' continued sale processes, including for assets in Alaska and their "control state" operations in 17 states.  Critically, absent immediate access to the DIP Facility, the Debtors will be unable to continue to perform under the TSAs, which is a key source of liquidity for the Debtors

during these chapter 11 cases.  Accordingly, without access to Cash Collateral and the proceeds of the DIP Facility, I do not believe that the Debtors will be able to avoid an immediate, disorderly, and value-destructive liquidation of their businesses to the detriment of their estates, creditors, and other stakeholders, including thousands of employees, vendors, and suppliers.

14.     Interim approval of the DIP Facility will permit the Debtors to access up to $50 million of new-money Revolving DIP Commitments during the interim period, and access to the Cash Collateral.  Based on my experience in the restructuring industry generally and the last several months with the Debtors in particular, it is my opinion that approval of the DIP Facility and use of Cash Collateral during the interim period will be critical to the Debtors' ability to continue operating and successfully administer these cases.  Moreover, as discussed below, I believe that the Debtors' total new-money funding need for these chapter 11 cases is consistent with the overall size of the DIP Facility, including the $75 million of DIP New Money Loans.

15.     Over the preceding months, I and other AlixPartners professionals assisted and advised the Debtors in evaluating the amount of funding that the Debtors will require in these chapter 11 cases.  I had several discussions and meetings with the Debtors' management team and the Advisors.  Based on those discussions and meetings, my experience in restructuring, and my familiarity with the Debtors, I believe that the Debtors' estates would benefit by entering into the DIP Facility and receiving access to the Cash Collateral.  The size of the DIP Facility and the amount requested on an interim basis was determined based on a thorough analysis conducted by myself and others at AlixPartners, together with the Debtors' management team and the other Advisors, of the Debtors' projected cash needs to fund the administrative costs of this chapter 11 process.  Based on this analysis, the Debtors, in consultation with AlixPartners, determined that they would require approximately $75 million in incremental new-money financing and continued

access to Cash Collateral—or some other form of committed financing—to fund the Debtors' chapter 11 cases and support their continued operations. This amount was derived from a cash-flow projection that AlixPartners developed from an analysis of the Debtors' projected receipts and disbursements, which is reflected in the 13-week cash-flow forecast attached as **Exhibit 1** hereto (the "DIP Budget").

16. The DIP Budget takes into account anticipated cash receipts and disbursements during the projected period, including in connection with (a) the closing of postpetition going-concern sale transactions and receipts and disbursements in connection with performance under the TSAs, (b) expenses associated with the DIP Facility and consensual use of the Cash Collateral, (c) restructuring costs (including professional fees), (d) other required operational payments, and (e) the fees and expenses associated with an orderly wind-down process. The DIP Budget is subject to a number of assumptions, including accounting for the effect of the chapter 11 filing on the Debtors' suppliers, vendors, and customers.

17. Based on my experience in numerous large-scale corporate bankruptcy cases, my familiarity with the Debtors' operations, extensive discussions with the Debtors' management team and the Advisors, including a team from AlixPartners acting under my supervision, I believe: (a) the DIP Budget represents a reasonable estimate of the Debtors' cash sources and needs during these chapter 11 cases; (b) the DIP Facility is essential to the preservation of the Debtors' estates and will provide the Debtors with sufficient liquidity to fund the administration of these chapter 11 cases; (c) the DIP Facility and the use of Cash Collateral are in the best interest of the Debtors and their estates; and (d) without access to the DIP Facility, the Debtors lack sufficient funds to continue operations necessary to preserve going-concern value, service the TSAs, and pursue the sale and orderly wind-down of the Debtors' estates. I believe that based on

the foregoing, entry into the DIP Facility is a sound exercise of the Debtors' business judgment and should be approved.

**The DIP Milestones**

18.     The Debtors must meet certain milestones (collectively, the "Milestones") under the DIP Facility, as set forth in the DIP Credit Agreement.  Such Milestones include, among others, (a) five business days after the Petition Date for the Debtors to file a chapter 11 plan (the "Plan") and disclosure statement, (b) 30 days after the Petition Date for the Debtors to deliver to the DIP Agent fully executed copies of binding purchase agreements related to sales for all or substantially all of the Debtors' assets that are contemplated to be sold as a going concern, (c) 35 days after the Petition Date for the Court to enter the Final Order, (d) 70 days after the Petition Date for the Court to confirm the Plan and approve one or more sales of all or substantially all of the Debtors' assets, and (e) 75 days after the Petition Date for the Plan to go effective.

19.     The Milestones, as with the other terms of the DIP Facility, are the product of good-faith, arm's-length negotiations between the Debtors and the DIP Lenders and are an integral component of the DIP Facility and the orderly administration of these chapter 11 cases.  The Milestones were a necessary inducement to ensure the DIP Lenders that their commitment was time-bound and that they would not be required to fund a protracted stay in chapter 11.  Under the Milestones, I believe that the Debtors have adequate time to pursue private sales for their remaining markets and, thereafter, to effectuate an orderly wind-down of their estates.  Based on my industry experience and knowledge of the Debtors' operations, I believe that the Milestones establish an appropriate timeline to negotiate and implement a value-maximizing wind-down and sale process.

20.     Access to the liquidity provided through the DIP Facility and Cash Collateral is necessary to, among other things, honor employee wages and benefits, pay critical suppliers who are vital to the Company's operations, and fund the administration of these chapter 11 cases.  The

Debtors require significant postpetition financing to support their working capital needs and execute additional sale transactions.  Without access to this much-needed liquidity, I believe the Debtors would face immediate and irreparable harm to the detriment of their estates, including the collateral positions of the Prepetition Lenders.

### Conclusion

21.     I believe that access to the DIP Facility and Cash Collateral will ensure the Debtors have sufficient funds to preserve and maximize the value of their estates, pursue their restructuring goals in the interim period, and responsibly administer these chapter 11 cases throughout the period that the Debtors expect will be necessary to implement and effectuate their sale and wind-down efforts.  Accordingly, I believe that the relief requested in the Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  July 27, 2026

/s/ John R. Castellano
Name:  John R. Castellano
Title:  Chief Restructuring Officer

**Exhibit 1**

**DIP Budget**

**Republic National Distributing Company, LLC**
**DIP Budget**

*$ USD millions*

| Week Ending | 1 7/31/2026 | 2 8/7/2026 | 3 8/14/2026 | 4 8/21/2026 | 5 8/28/2026 | 6 9/4/2026 | 7 9/11/2026 | 8 9/18/2026 | 9 9/25/2026 | 10 10/2/2026 | 11 10/9/2026 | 12 10/16/2026 | 13 10/23/2026 | Forecast Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll & Benefits | (7.5) | (2.8) | (7.0) | (1.9) | (6.6) | (3.3) | (7.4) | (3.2) | (3.1) | (4.6) | (1.6) | (1.2) | (2.1) | (52.1) |
| Vendor Payments | – | – | – | (4.4) | (4.4) | (4.3) | (4.3) | (4.3) | (2.3) | (2.3) | (2.3) | (2.0) | (1.8) | (32.4) |
| First Day Relief | (1.0) | (4.3) | (4.3) | (3.3) | – | – | – | – | – | – | – | – | – | (13.0) |
| Other (Excise Taxes, Insurance, Lease Payments) | (2.0) | (1.0) | (0.8) | – | – | (0.9) | (0.8) | (5.5) | – | (0.4) | – | (0.0) | – | (11.4) |
| Alaska & K&L Operations | – | – | – | (2.0) | (1.0) | (2.0) | (1.0) | (1.5) | – | – | – | – | – | (7.5) |
| **Total Operating Disbursements** | **(10.5)** | **(8.0)** | **(12.1)** | **(11.7)** | **(12.1)** | **(10.5)** | **(13.4)** | **(14.5)** | **(5.4)** | **(7.3)** | **(3.9)** | **(3.2)** | **(3.9)** | **(116.3)** |
| **Net Operating Cash Flow** | **(10.5)** | **(8.0)** | **(12.1)** | **(11.7)** | **(12.1)** | **(10.5)** | **(13.4)** | **(14.5)** | **(5.4)** | **(7.3)** | **(3.9)** | **(3.2)** | **(3.9)** | **(116.3)** |
| **Non-Oper. & Restructuring Cash Flows** | | | | | | | | | | | | | | |
| Professional Fees | (2.5) | (5.5) | (3.5) | (2.8) | (4.7) | (4.0) | (3.3) | (2.3) | (3.7) | (3.0) | (2.3) | (2.3) | (6.1) | (46.0) |
| Employee Retention | (1.4) | – | – | – | – | – | – | – | – | – | – | – | (3.5) | (4.9) |
| Net Transaction Proceeds | – | 2.4 | – | – | – | – | – | 91.4 | – | – | – | 12.9 | 63.4 | 170.1 |
| **Non-Oper. & Restructuring Cash Flows** | **(3.9)** | **(3.1)** | **(3.5)** | **(2.8)** | **(4.7)** | **(4.0)** | **(3.3)** | **89.1** | **(3.7)** | **(3.0)** | **(2.3)** | **10.6** | **53.8** | **119.2** |
| **Net Cash Flow Before Debt Service** | **(14.4)** | **(11.1)** | **(15.5)** | **(14.4)** | **(16.8)** | **(14.5)** | **(16.8)** | **74.6** | **(9.1)** | **(10.3)** | **(6.2)** | **7.4** | **49.9** | **2.9** |
| **Pre-DIP Draw/Paydown Debt Service** | | | | | | | | | | | | | | |
| Financing Fees/Funding of LC | (3.6) | – | – | – | – | – | – | – | – | – | – | – | (1.5) | (5.1) |
| Interest Payments | – | (0.2) | – | – | – | (0.9) | – | – | – | (2.1) | – | – | – | (3.2) |
| DIP Loan Draws/(Paydowns) | 18.0 | 11.6 | 15.0 | 15.0 | 17.0 | 15.0 | 17.0 | (54.1) | – | – | – | – | – | 54.6 |
| Blocked Account Draws/(Funding) | – | – | – | – | – | – | – | (21.3) | 10.0 | 12.0 | 6.0 | (6.9) | (53.4) | (53.6) |
| **Pre-DIP Draw/Paydown Debt Service** | **14.4** | **11.4** | **15.0** | **15.0** | **17.0** | **14.0** | **17.0** | **(75.4)** | **10.0** | **9.9** | **6.0** | **(6.9)** | **(54.9)** | **(7.3)** |
| **Net Cash Flow** | **0.0** | **0.3** | **(0.5)** | **0.6** | **0.3** | **(0.4)** | **0.3** | **(0.7)** | **0.9** | **(0.5)** | **(0.2)** | **0.5** | **(5.0)** | **(4.4)** |
| **Beginning Cash Balance** | $ 5.3 | $ 5.3 | $ 5.6 | $ 5.1 | $ 5.7 | $ 6.0 | $ 5.6 | $ 5.9 | $ 5.1 | $ 6.0 | $ 5.5 | $ 5.3 | $ 5.9 | $ 5.3 |
| Net Cash Flow | 0.0 | 0.3 | (0.5) | 0.6 | 0.3 | (0.4) | 0.3 | (0.7) | 0.9 | (0.5) | (0.2) | 0.5 | (5.0) | (4.4) |
| **Ending Cash Balance** | **$ 5.3** | **$ 5.6** | **$ 5.1** | **$ 5.7** | **$ 6.0** | **$ 5.6** | **$ 5.9** | **$ 5.1** | **$ 6.0** | **$ 5.5** | **$ 5.3** | **$ 5.9** | **$ 0.9** | **$ 0.9** |
| **DIP Summary** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| Customer Receipts | $ 4.0 | $ 4.0 | $ 3.3 | $ 3.3 | $ 2.1 | $ 2.1 | $ 2.1 | $ 2.1 | $ – | $ – | $ – | $ – | – | $ 22.9 |
| Inventory Receipts | – | – | 0.1 | 1.3 | 1.3 | 1.2 | 1.2 | 1.2 | 1.3 | 14.1 | 1.3 | 1.3 | 1.2 | 25.5 |
| Other Receipts | 5.5 | 1.7 | 0.0 | 5.5 | – | 7.2 | – | 5.5 | – | 8.2 | – | – | – | 33.7 |
| **Total Receipts** | **9.5** | **5.7** | **3.5** | **10.1** | **3.3** | **10.5** | **3.2** | **8.7** | **1.3** | **22.3** | **1.3** | **1.3** | **1.2** | **82.0** |
| **Beginning New Money DIP Balance** | – | 8.5 | 14.4 | 25.9 | 30.8 | 44.5 | 49.0 | 62.8 | – | – | – | – | – | – |
| Draw | 18.0 | 14.0 | 15.0 | 15.0 | 17.0 | 15.0 | 17.0 | 9.0 | – | – | – | – | – | 120.1 |
| Paydown for Weekly Receipts | (9.5) | (5.7) | (3.5) | (10.1) | (3.3) | (10.5) | (3.2) | (8.7) | – | – | – | – | – | (54.6) |
| Paydown from Transactions | – | (2.4) | – | – | – | – | – | (63.1) | – | – | – | – | – | (65.5) |
| **Ending New Money DIP Balance** | **8.5** | **14.4** | **25.9** | **30.8** | **44.5** | **49.0** | **62.8** | **–** | **–** | **–** | **–** | **–** | **–** | **–** |
| **Beginning Blocked Account Balance** | – | – | – | – | – | – | – | – | 21.3 | 12.6 | 22.9 | 18.2 | 26.4 | – |
| Draw | – | – | – | – | – | – | – | (7.0) | (10.0) | (12.0) | (6.0) | (6.0) | (10.0) | (51.0) |
| Funding from Weekly Receipts | – | – | – | – | – | – | – | – | 1.3 | 22.3 | 1.3 | 1.3 | 1.2 | 27.4 |
| Funding from Transactions | – | – | – | – | – | – | – | 28.3 | – | – | – | 12.9 | 63.4 | 104.6 |
| **Ending Blocked Account Balance** | **–** | **–** | **–** | **–** | **–** | **–** | **–** | **21.3** | **12.6** | **22.9** | **18.2** | **26.4** | **81.0** | **81.0** |
| Ending Cash | 5.3 | 5.6 | 5.1 | 5.7 | 6.0 | 5.6 | 5.9 | 5.1 | 6.0 | 5.5 | 5.3 | 5.9 | 0.9 | 0.9 |
| Ending Blocked Account Balance | – | – | – | – | – | – | – | 21.3 | 12.6 | 22.9 | 18.2 | 26.4 | 81.0 | 81.0 |
| **Available Liquidity** | **$ 5.3** | **$ 5.6** | **$ 5.1** | **$ 5.7** | **$ 6.0** | **$ 5.6** | **$ 5.9** | **$ 26.4** | **$ 18.6** | **$ 28.5** | **$ 23.6** | **$ 32.3** | **$ 81.9** | **$ 81.9** |
| **Memo** | | | | | | | | | | | | | | |
| **Total DIP Availability** | $ 50.0 | $ 50.0 | $ 50.0 | $ 50.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 |
| **DIP Availability** | $ 41.5 | $ 35.6 | $ 24.1 | $ 19.2 | $ 30.5 | $ 26.0 | $ 12.2 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 | $ 75.0 |
| **DIP Draws** | $ 18.0 | $ 14.0 | $ 15.0 | $ 15.0 | $ 17.0 | $ 15.0 | $ 17.0 | $ 16.0 | $ 10.0 | $ 12.0 | $ 6.0 | $ 6.0 | $ 10.0 | $ 171.1 |
| **DIP-Roll Up Loan Balance** | $ 66.3 | $ 66.3 | $ 66.3 | $ 66.3 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 | $ 175.0 |
| **Prepetition ABL Loan Balance** | $ 157.6 | $ 157.6 | $ 157.6 | $ 157.6 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 | $ 48.9 |